**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Lewis Aaron COOK, Defendant–Appellant.**

**Nos. 93–5279, 94–5007 and 94–5041.**

United States Court of Appeals, Tenth Circuit.

Jan. 23, 1995.

957 F.2d at 760; *Rodriguez v. Maynard,* 948 F.2d 684, 687 (10th Cir.1991).

John E. Dowdell of Norman & Wohlgemuth, Tulsa, OK, for defendant-appellant.

James L. Swartz, Asst. U.S. Atty. (Stephen C. Lewis, U.S. Atty., with him on the brief), Tulsa, OK, for plaintiff-appellee.

Before BALDOCK and LOGAN, Circuit Judges, and BURCIAGA, District Judge.*

* The Honorable Juan G. Burciaga, Senior United States District Judge for the District of New Mexico, sitting by designation.

1.  Specifically, Defendant claimed he was denied effective assistance of counsel "by the trial court, ordering, retained counsel to visit with Ms. Cross" thereby creating a conflict of interest. Vol. I, Tab 79.

2.  Defendant was represented by the same counsel at trial and on direct appeal.

BALDOCK, Circuit Judge.

This is Defendant Lewis Aaron Cook's second appeal to this Court following denial of his 28 U.S.C. § 2255 motion. In 1990, Defendant was convicted of drug-related charges in federal court and sentenced to concurrent prison terms of 262 months and 240 months. We affirmed Defendant's conviction and sentence on direct appeal. *See United States v. Cook ("Cook I"),* 949 F.2d 289 (10th Cir.1991). Thereafter, Defendant filed a § 2255 motion alleging in pertinent part: (1) his attorney encouraged Yvonne Cross, a government witness, to testify against him creating a conflict of interest,[1] and (2) his appellate counsel was ineffective. *United States v. Cook ("Cook II"),* 997 F.2d 1312, 1315–16 (10th Cir.1992). The district court denied his motion. *Id.* at 1316. We reversed, noting that Defendant's failure to raise the issues contained in his § 2255 motion on direct appeal "bars him from raising [them] in his § 2255 motion, unless he can show cause excusing his procedural default and actual prejudice resulting from the error of which he complains." *Id.* at 1320. Because Defendant's assertion of ineffective assistance of appellate counsel could establish sufficient cause for his procedural default, we remanded for the district court to consider whether Defendant's counsel had rendered ineffective assistance on direct appeal.[2] *Id.*

On remand, the district court conducted an evidentiary hearing and determined Defendant had received effective assistance of counsel on direct appeal. The court therefore held that Defendant had failed to establish cause for his procedural default and denied Defendant's motion.[3] On appeal, we exercise jurisdiction under 28 U.S.C. § 1291, and we again reverse.[4]

3.  The district court judge which denied Defendant's § 2255 motion was also the presiding judge at Defendant's trial.

4.  On December 10, 1993, Defendant filed a notice of appeal following the district court's issuance of its findings of fact and conclusions of law. The clerk has docketed the December 10th notice of appeal as No. 93–5279. In addition, Defendant, proceeding pro se, filed two additional notices of appeal following the entry of the

## I.

The record reveals the following relevant facts. Defendant, along with co-defendants Yvonne Cross and Linda Kaye Burdine, retained Jeffrey D. Fischer to jointly represent them following their arrest on drug charges. Prior to trial, the government and co-defendant Cross entered into a plea agreement which required Cross to testify in the government's case-in-chief against Cook in exchange for the government's recommendation of leniency at sentencing. Subsequently, the government filed a motion to recuse Fischer from representing Cross in light of the "very real conflict of interest between defendants Cook and Cross." Fischer filed a response acknowledging the conflict of interest. The district court granted the motion and appointed Ernest Bedford as separate counsel for Cross. Fischer continued to represent Defendant.

At trial, on December 20, 1989, the government called Cross to testify. In contravention of her plea agreement, Cross refused to testify against Defendant:

> Q. Ms. Cross, are you a defendant in this case with Mr. Lewis Cook and Ms. Linda Burdine?
>
> A. Yeah, I will not testify against Lewis Aaron Cook.
>
> THE COURT: Do you understand the question? Are you stating that you refuse to give testimony?
>
> THE WITNESS: Yes, I do.

Tr.Vol. II at 398. Upon further questioning by the district court, Cross continued to refuse to testify against Defendant. *Id.* at 402–03.

As a result of Cross' refusal to testify, the district court ordered Fischer, Defendant's attorney, to meet with Cross and apprise her of the consequences of her refusal to testify in accordance with her plea agreement. The following colloquy occurred between the district court and Fischer:

> THE COURT: All right. I tell you what I'm going to do. I'm going to take a short recess, and I want Mr. Fischer, Mr. Fischer as an officer of this Court and as counsel experienced in criminal matters, I want you to visit with Ms. Cross. *I do understand that there is a conflict situation.*
>
> MR. FISCHER: *Not only is there a conflict,* if Your Honor please, this Court has—
>
> THE COURT: I have—that's right, I've entered an order, that is true.
>
> MR. FISCHER:—recused me for precisely that reason. Now, if it's the Court's pleasure for me to do so and give her general information, I'll be happy to do so.
>
> THE COURT: All I'm doing is trying to insure that ... Yvonne Cross is aware of her situation and her jeopardy at this point. And I will for the limited purpose of your advising her of what can happen, I want you to do that.
>
> MR. FISCHER: Yes, Your Honor.

*Id.* (emphasis added). After further discussions with the government's attorney, the district court reiterated its prior order:

> THE COURT: I would ask that both you [government's attorney] and Mr. Fischer advise her in that regard so that she will be fully advised as to her rights and what she faces if she refuses to testify, because at this point, she is not under jeopardy, but if she continues this refusal then she has serious problems.

*Id.* at 405.

Despite his misgivings, Fischer attended the meeting with Cross along with her court-appointed attorney, Bedford, and the government prosecutor. At the meeting, Fischer did not communicate with Cross and was present only as an observer to the conversation between Cross, Bedford, and the government prosecutor. After the meeting, Cross returned to the stand and delivered testimony which the government acknowledges "was damaging to [Defendant's] case." Defendant was ultimately convicted.

In his direct appeal, Defendant—through his attorney Fischer—did not raise any con-

---

district court's final judgment in favor of the government on December 13, 1993. The clerk has docketed these additional appeals as Nos. 94–5007 and 94–5041. Given our resolution of appeal No. 93–5279, we need not consider additional issues raised by the Defendant, pro se, in appeal Nos. 94–5007 and 94–5041.

flict of interest issues concerning the court-ordered meeting with Cross. At the § 2255 evidentiary hearing conducted by the district court following our remand in *Cook II*, Fischer testified that he did not raise the issue on appeal because "it was my perception that there was no legitimate issue that arose out of the meeting with Ms. Cross that was worthy of appellate review based on my perception of the circumstances and the law." Tr. Vol. IV at 171. Additionally, Fischer testified that he did not pursue any legal research concerning the issue. *Id.* at 175–76. However, Fischer testified that he did not believe the meeting "was a good idea consistent with the exercise of [his] best professional judgment." Tr.Vol. IV at 153. Specifically, Fischer testified that he had a number of concerns about the meeting:

> One of them was not offending Judge Ellison, one of them was doing right by my client. One of them was comporting myself in accordance with what I believed was the substance of the canons of ethics and that these were in conflict to some extent, these ambitions were to some extent mutually exclusive, and I had a practical problem of basically trying to serve three masters ... at the same time.

*Id.* at 156.

Following the completion of the § 2255 hearing, the district court held that counsel's omission of the conflict of interest issue on direct appeal did not constitute ineffective assistance of counsel. Applying the standards set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the district court found that Defendant had failed to show he had been prejudiced by appellate counsel's alleged error because the record failed to establish that had counsel raised the conflict of interest issue, "the result of the [appeal] would have been different." Finding that Defendant had failed to make this showing, the district court denied Defendant's § 2255 motion as procedurally barred.

■ In the present appeal, Defendant contends he received ineffective assistance of counsel because his counsel failed to raise a conflict of interest issue on direct appeal. Consequently, Defendant contends he has established cause for his procedural default. In reviewing ineffective assistance of counsel claims, "[w]e must accept the district court's underlying factual findings unless clearly erroneous, but we review de novo whether counsel's performance was legally deficient and whether any deficiencies prejudiced [the Defendant]." *United States v. Haddock*, 12 F.3d 950, 955 (10th Cir.1993).

## II.

### A.

■ "Section 2255 motions are not available to test the legality of matters which should have been raised on direct appeal." *United States v. Warner*, 23 F.3d 287, 291 (10th Cir.1994) (citation omitted). Consequently, a defendant may not raise claims that were not presented on direct appeal unless he can show cause and prejudice resulting from the error. *Id.* A defendant may establish cause for his procedural default by showing that he received ineffective assistance of counsel in violation of the Sixth Amendment. *Murray v. Carrier*, 477 U.S. 478, 488, 106 S.Ct. 2639, 2645, 91 L.Ed.2d 397 (1986). To establish a claim for ineffective assistance of counsel, a defendant must show that (1) his counsel's performance was constitutionally deficient, and (2) counsel's deficient performance was prejudicial. *Strickland*, 466 U.S. at 687, 104 S.Ct. at 2064. Counsel's performance is deficient if the representation "falls below an objective standard of reasonableness." *Id.* at 690, 104 S.Ct. at 2066. Prejudice is "a reasonable probability that, but for counsel's unprofessional errors, the result . of the proceeding would have been different." *Id.* at 694, 104 S.Ct. at 2068. Although *Strickland* set forth standards for determining the effectiveness of trial counsel, we have applied those same standards in assessing the effectiveness of appellate counsel. *See, e.g., United States v. Dixon*, 1 F.3d 1080, 1083 (10th Cir.1993); *United States v. Walling*, 982 F.2d 447, 449 (10th Cir.1992).

■ When a defendant alleges his appellate counsel rendered ineffective assistance by failing to raise an issue on appeal, we examine the merits of the omitted issue. *See Dixon*, 1 F.3d at 1083 (addressing merits of

defendant's Fourth Amendment claim which was omitted on direct appeal). If the omitted issue is without merit, counsel's failure to raise it "does not constitute constitutionally ineffective assistance of counsel." *Id.* at 1084 n. 5. We therefore proceed with an analysis of Defendant's conflict of interest claim.

### 1.

■ Defendant's conflict of interest claim centers on the court-ordered meeting between his attorney and Cross. Defendant argues that he was denied effective assistance of counsel free from conflicts of interest when the district court ordered his attorney to advise Cross to comply with her plea agreement.[5] We agree.

■ The Sixth Amendment right to effective assistance of counsel encompasses "a correlative right to representation that is free from conflicts of interest." *Wood v. Georgia,* 450 U.S. 261, 271, 101 S.Ct. 1097, 1103, 67 L.Ed.2d 220 (1981) (citing *Cuyler v. Sullivan,* 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980) and *Holloway v. Arkansas,* 435 U.S. 475, 98 S.Ct. 1173, 55 L.Ed.2d 426 (1978)). Typical conflict of interest cases giving rise to claims of ineffective assistance of counsel involve multiple representation of co-defendants at a single trial. *Osborn v. Shillinger,* 861 F.2d 612, 625 (10th Cir.1988) (citing cases). However, a defendant's right to counsel free from conflicts of interest "is not limited to cases involving joint representation of co-defendants ... but extends to any situation in which a defendant's counsel owes conflicting duties to that defendant and some other third person." *United States v. Soto Hernandez,* 849 F.2d 1325, 1328 (10th Cir.1988) (citations omitted).

■ The Supreme Court has handed down two divergent lines of authority for examining conflict of interest claims, each focusing on whether and to what extent the alleged conflict was brought to the district court's attention. In *Holloway,* the Court held that when a defendant makes a timely conflict of interest objection and the trial court fails to

adequately inquire into the possibility of conflict, a defendant demonstrates ineffective assistance of counsel without a showing of actual conflict of interest. *See Holloway,* 435 U.S. at 487–91, 98 S.Ct. at 1180–82; *see also Selsor v. Kaiser,* 22 F.3d 1029, 1033 (10th Cir.1994). In this instance, prejudice to the defendant is presumed and reversal of the defendant's conviction is automatic. *Holloway,* 435 U.S. at 488–89, 98 S.Ct. at 1180–81; *see also United States v. Burney,* 756 F.2d 787, 791 (10th Cir.1985) ("The Sixth Amendment requires automatic reversal only when a trial court fails to conduct an inquiry after ... a timely conflict objection.").

Although *Holloway* was a multiple representation case, the district court's duty of inquiry "arise[s] whenever there is the possibility that a criminal defendant's attorney suffers from any sort of conflict of interest." *United States v. Levy,* 25 F.3d 146, 153 (2d Cir.1994). This is so because a trial court has an " 'independent duty to ensure that criminal defendants receive a trial that is fair and does not contravene the Sixth Amendment.' " *Id.* (quoting *Wheat v. United States,* 486 U.S. 153, 161, 108 S.Ct. 1692, 1698, 100 L.Ed.2d 140 (1988)).

On the other hand, in *Cuyler,* the Court held that if a defendant fails to make a timely conflict objection before the district court, "the possibility of conflict is insufficient to impugn a criminal conviction." *Cuyler,* 446 U.S. at 350, 100 S.Ct. at 1719. Rather, a defendant must show "counsel actively represented conflicting interests" and that the "conflict of interest adversely affected his lawyer's performance." *Id.* Once an actual conflict and an adverse effect are shown, a defendant "need not demonstrate prejudice in order to obtain relief." *Id.* at 349–50, 100 S.Ct. at 1719; *see also Strickland,* 466 U.S. at 692, 104 S.Ct. at 2067 (prejudice presumed upon showing of actual conflict and adverse effect).

### 2.

We conclude *Holloway* controls the instant case. Here, the district court knew of the

---

5. The record indicates Cross' plea agreement required her to testify against Defendant as a government witness in exchange for the govern-

ment's recommendation of leniency at sentencing.

conflict of interest between Cross, a government witness, and Defendant prior to trial, and recused Fischer from representing Cross for that reason. Nevertheless, at trial, the district court ordered Fischer to advise Cross of the consequences of failing to testify in accordance with her plea agreement. Because Cross' plea agreement required her to render testimony against Defendant as a government witness, the district court's order essentially required Fischer to take part in persuading Cross to testify against his client—*i.e.*, Defendant. At this point, Fischer's potential conflict of interest was patent because he was placed in a position of representing interests of a government witness directly adverse to those of his client. Indeed, in issuing this order, the district court itself stated, "I do understand that there is a conflict situation." Tr. Vol. II at 402–03.

Against the backdrop of this conflict of interest situation, Fischer timely objected to the court's order, noting that "[n]ot only is there a conflict, if Your Honor please, this Court has ... recused me for precisely that reason." *Id.* In the face of this timely objection, and after previously recusing Fischer from representing Cross because of the conflict of interest, the district court "turn[ed] a blind eye to an obvious possible conflict," *Levy,* 25 F.3d at 154, and again insisted that Fischer meet with Cross "for the limited purpose of ... advising her of what [could] happen" if she failed to testify in accordance with her plea agreement. Under these circumstances, we conclude the district court failed to comply with the dictates of *Holloway* by " '*insisting ... that counsel undertake to concurrently represent interests which might diverge from those of his first client, when the possibility of that divergence is brought home to the court.*' " *Holloway,* 435 U.S. at 485, 98 S.Ct. at 1173 (emphasis in original) (quoting *Glasser v. United States,* 315 U.S. 60, 76, 62 S.Ct. 457, 467, 86 L.Ed. 680 (1941)). As a result, Defendant was deprived of his Sixth Amendment right to conflict-free assistance of counsel.[6]

**3.**

█ Having concluded Defendant's conflict of interest claim was meritorious, we must determine whether counsel's failure to raise the claim on direct appeal was constitutionally deficient and prejudicial to Defendant. *See Strickland,* 466 U.S. at 687, 104 S.Ct. at 2064. In reviewing counsel's decision to omit an issue on appeal, our "scrutiny ... must be highly deferential." *Id.* at 689, 104 S.Ct. at 2065. "A fair assessment of attorney performance requires every effort be made 'to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.' " *Dever v. Kansas State Penitentiary,* 36 F.3d 1531, 1537 (10th Cir.1994) (quoting *Strickland,* 466 U.S. at 689, 104 S.Ct. at 2065). "Counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.*

█ *Strickland* 's performance and prejudice prongs "partially overlap when evaluating the performance of appellate counsel." *Miller v. Keeney,* 882 F.2d 1428, 1434 (9th Cir.1989). The Sixth Amendment does not require an attorney to raise every nonfrivolous issue on appeal. *See Jones v. Barnes,* 463 U.S. 745, 751, 103 S.Ct. 3308, 3312–13, 77 L.Ed.2d 987 (1983). Consequently, appellate counsel engage in a process of " 'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail." *Smith v. Murray,* 477 U.S. 527, 536, 106 S.Ct. 2661, 2667, 91 L.Ed.2d 434 (1985) (quoting *Jones,* 463 U.S. at 751–52, 103 S.Ct. at 3313). The weeding out of weak claims to be raised on appeal "is the hallmark of effective advocacy," *Tapia v. Tansy,* 926 F.2d 1554, 1564 (10th Cir.1991), *cert. denied,* 502 U.S. 835, 112 S.Ct. 115, 116 L.Ed.2d 84 (1991), because "every weak issue in an appellate brief or argument detracts from the attention a judge

---

6. The government makes much of the fact that because Defendant's counsel was only an observer at the meeting with Cross, no conflict of interest existed. This argument misses the mark. Under *Holloway,* it is the improper actions of the trial court, following a defendant's timely objection, that define our conflict of interest inquiry. Consequently, the actions of Defendant's attorney at the meeting with Cross are irrelevant under a *Holloway* inquiry.

can devote to the stronger issues, and reduces appellate counsel's credibility before the court." *Miller,* 882 F.2d at 1434. Consequently, "[a]ppellate counsel will ... frequently remain above an objective standard of competence ... and have caused her client no prejudice ... for the same reason—because she declined to raise a weak issue." *Id.; see also McBride v. Sharpe,* 25 F.3d 962, 973 (11th Cir.1994) (counsel's actions were not deficient in part because counsel omitted a weak issue to avoid "clutter[ing] the brief with weak arguments"), *cert. denied,* —— U.S. ——, 115 S.Ct. 489, 130 L.Ed.2d 401 (1994); *Bond v. United States,* 1 F.3d 631, 635 n. 2 (7th Cir.1993) ("[C]ounsel's strategy decisions—including the decision not to pursue a plethora of issues on appeal—ordinarily do not violate the Sixth Amendment's guarantee of effective assistance of counsel.").

Conversely, an appellate advocate may deliver deficient performance and prejudice a defendant by omitting a "dead-bang winner," even though counsel may have presented strong but unsuccessful claims on appeal. *Page v. United States,* 884 F.2d 300, 302 (7th Cir.1989). Although courts have not defined the term "dead-bang winner," we conclude it is an issue which was obvious from the trial record, *see, e.g., Matire v. Wainwright,* 811 F.2d 1430, 1438 (11th Cir.1987) (counsel's failure to raise issue which "was obvious on the record, and must have leaped out upon even a casual reading of [the] transcript" was deficient performance), *and* one which would have resulted in a reversal on appeal. By omitting an issue under these circumstances, counsel's performance is objectively unreasonable because the omitted issue is obvious from the trial record. Additionally, the omission prejudices the defendant because had counsel raised the issue, the defendant would have obtained a reversal on appeal.

█ In the instant case, we conclude that although counsel presented several strong but unsuccessful claims on direct appeal, *see Cook I,* 949 F.2d 289, counsel omitted a "dead-bang" winner—*i.e.,* the conflict of interest issue—and thus rendered ineffective assistance. The conflict of interest issue was obvious from the trial record as the inappropriateness of the trial court's order "leaped out upon even a casual reading of [the] transcript." *Matire,* 811 F.2d at 1438. Indeed, both Defendant's counsel and the district court recognized on the record that there was a conflict of interest resulting from the court's order. Moreover, had counsel raised the issue, under *Holloway*'s rule of automatic reversal, Defendant's conviction would have been reversed. Under the circumstances viewed "as of the time of counsel's conduct," *Strickland,* 466 U.S. at 690, 104 S.Ct. at 2066, we conclude counsel's failure to raise the conflict of interest issue was constitutionally deficient and prejudiced the Defendant. Consequently, we conclude Defendant's appellate counsel was ineffective. Defendant has therefore established "cause" for his procedural default under the cause and prejudice test.

### B.

█ Having concluded Defendant has established cause for his procedural default, we must next consider whether he has established prejudice. *See Warner,* 23 F.3d at 291. In examining this question, we must consider whether the conflict of interest resulting from the district court's order worked to Defendant's "actual and substantial disadvantage [by] infecting his entire trial with error of constitutional dimensions." *United States v. Frady,* 456 U.S. 152, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982). As our previous discussion of this issue illustrates, *see supra* part II.A.2, the district court's order infected Defendant's "entire trial with error of constitutional dimensions." As a result of the district court's failure to follow the dictates of *Holloway,* Defendant was deprived of his Sixth Amendment right to conflict-free assistance of counsel. Thus, Defendant has established prejudice for the purposes of cause-and-prejudice analysis.

### III.

In conclusion, although Defendant did not raise the conflict of interest issue on direct appeal, we hold that cause and prejudice present in this case excuse the omission. Moreover, because Defendant has demonstrated that the district court's failure to comply with the dictates of the Supreme

Court's decision in *Holloway* deprived him of his Sixth Amendment right to effective assistance of counsel, we REVERSE the judgment of the district court denying Defendant's § 2255 motion. We REMAND to the district court with directions to grant the § 2255 motion unless the government commences proceedings to retry Defendant within such reasonable time as the district court may determine. We also DISMISS the appeals in Nos. 94–5007 and 94–5041.