51 F.3d 287
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Steve E. WILLIAMS, Defendant-Appellant.
 No. 94-3010.
(D.C. No. 93-40001)
 United States Court of Appeals, Tenth Circuit.
 March 27, 1995.
 
 1
 Before EBEL and KELLY, Circuit Judges, and COOK, District Judge.[2]
 
 
 2
 Mr. Williams appeals from his 352-month sentence for conspiracy to distribute marijuana, 21 U.S.C. 846, and money laundering, 18 U.S.C.1956(a)(1)(i) & 2, contending that the district court erred in calculating his sentence under the Sentencing Guidelines. Mr. Williams contends that the district court erred by (1) imposing a base offense level of 32 in light of insufficient evidence that he was responsible for producing 4,000 pounds of marijuana, (2) concluding that it lacked the authority to depart downward, despite Mr. Williams' atypical role in the conspiracy, (3) enhancing his sentence four levels for being an organizer of a criminal activity involving five or more participants, (4) granting him a two level, rather than a three level, reduction for acceptance of responsibility, (5) finding him to be a category III criminal. We have jurisdiction pursuant to 28 U.S.C. 1291 and 18 U.S.C. 3742(a).
 
 Background
 
 3
 As part of a conspiracy to distribute marijuana, Mr. Williams was responsible for harvesting and transporting wild marijuana (ditch weed) to Joseph Schweibinz on the East Coast. Using the ditch weed as filler, Mr. Schweibinz mixed Mr. Williams' contribution with a higher grade marijuana and distributed it.
 
 
 4
 In September 1991, Mr. Williams and a coconspirator made a delivery of 240 pounds of ditch weed to Mr. Schweibinz. On their return to Kansas, they were met by police. The police searched their car, seized $43,000, and arrested Mr. Williams' coconspirator for driving under the influence and for possession of 240 grams of marijuana. The coconspirator subsequently testified that this marijuana was for his personal use.
 
 
 5
 Soon thereafter, agents of the Internal Revenue Service and the Kansas Bureau of Investigation served a series of search warrants on Mr. Williams' house and the homes of others suspected of participating in the marijuana conspiracy. Numerous items of evidence were recovered, including controlled substances and firearms.
 
 
 6
 In January 1993, Mr. Williams and a number of his co-conspirators were indicted. Mr. Williams and Mr. Schweibinz were charged with operating a continuing criminal conspiracy. The government negotiated plea agreements with all of the defendants, except Mr. Williams. Pursuant to these agreements, each defendant agreed to testify against Mr. Williams. Shortly before trial, Mr. Williams entered a guilty plea to counts one and seven of the indictment, and acknowledged making multiple shipments of ditch weed to Mr. Schweibinz, totaling in excess of 1,000 pounds.
 
 
 7
 The district court held a hearing concerning controverted sentencing issues. One of his codefendants testified that Mr. Williams shipped a total of 4,000 pounds of wild marijuana to Mr. Schweibinz between 1987 and 1991. Relying upon this 4,000 pound quantity, the district court calculated Mr. Williams' level offense level at 32. The court then enhanced this base level to 38 by adding two levels for possession of a firearm, four levels for being an organizer/leader of a criminal activity involving five or more participants, and two levels for obstruction of justice. The court determined Mr. Williams' criminal history at category III. This offense level and criminal history, translated into a guideline imprisonment range of 292-365 months. The district court sentenced him to 292 months for violating 21 U.S.C. 846 and 60 months for violating 18 U.S.C.1956(a)(1)(B)(i) and 2, for a total of 352 months imprisonment.
 
 I. Base Offense Level
 
 8
 Mr. Williams claims that the district court erred in finding that he was criminally responsible under the Guidelines for 4,000 pounds of marijuana. We accept the district court's factual findings unless clearly erroneous and give due deference to the district court's application of the Sentencing Guidelines to the facts. United States v. Powell, 982 F.2d 1422, 1435 (10th Cir.1992), cert. denied, 113 S.Ct. 2361 (1993); 18 U.S.C. 3742(d),(e). The district court was entitled to estimate the drug quantity of Mr. Williams' activity, provided the information supporting the calculation possessed a minimum indicia of reliability. United States v. McIntyre, 997 F.2d 687, 709 (10th Cir.1993), cert. denied, 114 S.Ct. 736 (1994).
 
 
 9
 Mr. Williams contends that the district court wrongly relied on the presentence report and the testimony of one of his codefendants in attributing him with harvesting and transporting 4,000 pounds of marijuana. According to the report and the testimony, Mr. Williams shipped 1,000 pounds per year to Mr. Schweibinz between 1987 and 1991. Since Mr. Williams has supplied no evidence to the contrary, and we will not reexamine the credibility of a witness' testimony, id., we that find the district court did not err in calculating of Mr. Williams' base offense level at 32.
 
 II. Downward Departure
 
 10
 Mr. Williams contends that the district court erred by refusing to depart downward despite his atypical role in the marijuana conspiracy. We cannot review the district court's discretionary refusal to depart downward, however, we may review a court's erroneous conclusion that the guidelines did not permit a downward departure. United States v. Haggerty, 4 F.3d 901, 902-03 (10th Cir.1993).
 
 
 11
 Mr. Williams argues that the district court should have departed downward under U.S.S.G. 2D1.1, because he was only responsible for supplying Mr. Schweibinz with ditch weed, a lower quality of marijuana, as opposed to a higher grade marketable form of marijuana. Mr. Williams asserts that the district court erroneously believed that U.S.S.G. 2D1.1 did not provide it the authority to depart downward for lower purity drugs. We disagree with Mr. Williams' reading of this guideline provision.
 
 
 12
 While 2D1.1 authorizes a sentencing court to consider the purity of the controlled substance, it only advocates doing so in order to depart upward in cases involving particularly high purity drugs. See U.S.S.G. 2D1.1, comment. (n.9); United States v. Asseff, 917 F.2d 502, 506 (11th Cir.1990). However, no corresponding provision in the Guidelines suggests a downward departure for low quality drugs. Other circuits have rejected downward departures for low quality drugs, and we likewise decline to allow such a departure. See United States v. Upthegrove, 974 F.2d 55, 56 (7th Cir.1992) (affirming the district court's refusal to depart downward for the defendant's role as the supplier of ditch weed for filler); United States v. Davis, 868 F.2d 1390, 1393 (5th Cir.1989); United States v. Benish, 5 F.3d 20, 27-28 (3d Cir.1993).
 
 
 13
 Alternatively, Mr. Williams argues that U.S.S.G. 5K2.0 provided the district court with the authority to make such a downward departure due to his role in the conspiracy as a low-grade marijuana supplier. Section 5K2.0 authorizes downward departures when the court finds that three criteria are met, namely, "(1) ... the circumstance [is] 'of a kind, or to a degree, not adequately' considered in the Guidelines; (2) ... the circumstance [is] 'aggravating or mitigating'; and (3) ... the circumstance [should] result in a sentence different from that described.' " Haggerty, 4 F.3d at 903. Mr. Williams has not presented anything indicating that the district court erroneously believed that it could not depart downward pursuant to this Guideline. Moreover, we fail to see any factors which would take this case out of the heartland of the Sentencing Guidelines.
 
 
 14
 III. Sentence Enhancement Under U.S.S.G. 3B1.1(a)
 
 
 15
 Mr. Williams contends that the district court erred in concluding that he was an organizer/leader of five or more conspiracy participants, warranting a four level enhancement under U.S.S.G. 3B1.1(a). We review the district court's factual finding under this provision for clear error. United States v. Litchfield, 959 F.2d 1514, 1521 (10th Cir.1992). The government has the burden of proving by a preponderance of the evidence that the enhancement under 3B1.1(a) applies to the Defendant. United States v. Mays, 902 F.2d 1501, 1502-03 (10th Cir.1990).
 
 
 16
 Section 3B1.1(a) of the Guidelines provides for a four level enhancement for those offenders who are "organizer[s] or leader[s] of a criminal activity that involves five or more participants or was otherwise extensive...." Application of 3B1.1 requires consideration of the following factors:
 
 
 17
 the exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others.
 
 
 18
 U.S.S.G. 3B1.1, comment (n.4).
 
 
 19
 From our review of the record, we find that the district court did not err in holding that Mr. Williams occupied a management or leadership role in the marijuana conspiracy which involved five or more persons. At trial, the government established that Mr. Williams controlled the ditch weed operation; he was responsible for its delivery to Mr. Schweibinz; at least nine other persons, beyond those indicted as co-conspirators, assisted Mr. Williams with the harvest, collection, and transportation of the marijuana; the co-conspirators depended on Mr. Williams to instruct them as to when and how much marijuana to harvest; those involved in the conspiracy reported to Mr. Williams, not to Mr. Schweibinz; Mr. Williams recruited members; and he made a significant amount of money, between $100,000 and $200,000 per year, as a result of this operation. These facts clearly support the district court's decision to enhance Mr. Williams' sentence for being a leader/organizer of the marijuana conspiracy.
 
 
 20
 IV. Sentence Reduction for Acceptance of Responsibility
 
 
 21
 Mr. Williams next contends that he was entitled to a three, as opposed to a two, level reduction for acceptance of responsibility. We review the district court's findings as to acceptance of responsibility under a clearly erroneous standard. United States v. Portillo-Valenzuela, 20 F.3d 393, 394 (10th Cir.1994) (acceptance of responsibility is a highly factual issue best determined by the sentencing court), petition for cert. filed, (June 22, 1994) (No. 94-5132). We will overturn the district court's acceptance of responsibility determination only if it is without foundation. United States v. Amos, 984 F.2d 1067, 1072 (10th Cir.1993); U.S.S.G. 3E1.1, comment (n.5). According to U.S.S.G. 3E1.1(b)(2), guilty pleas must be made in a timely fashion in order to qualify for an extra one-level reduction. Mr. Williams waited six months before he pleaded guilty. He was the last of the defendants indicted in the marijuana conspiracy to so plead. By the time he pleaded guilty, it was four days before trial and the government had fully prepared its case. See United States v. Robinson, 14 F.3d 1200, 1203 (7th Cir.1994) (plea made four days before trial is not early enough to satisfy 3E1.1(b)(2)); United States v. Kerr, 13 F.2d 203, 205 (7th Cir.1993) (being the last conspirator to plead guilty casts doubt on remorse), cert. denied, 114 S.Ct. 1629 (1994). For these reasons, we find that the district court did not err by denying Mr. Williams an additional reduction under 3E1.1(b)(2).
 
 V. Mr. Williams as a Category III Criminal
 
 22
 Lastly, Mr. Williams alleges that the district court made three errors in calculating his criminal history category. We review the district court's application of the Guidelines de novo, United States v. Banashefski, 928 F.2d 349, 351 (10th Cir.1991), and we accept the court's factual findings unless clearly erroneous. United States v. Roberts, 898 F.2d 1465, 1468-69 (10th Cir.1990).
 
 
 23
 Mr. Williams contends that the district court gave him one point for a prior sentence of marijuana possession that was, in fact, part of the instant offense and therefore not a "prior sentence" under U.S.S.G. 4A1.2(a)(1). In addition, he challenges the two points assigned to him under U.S.S.G. 4A1.1(d) for committing the instant offense while on probation for a prior criminal conviction. Because Mr. Williams failed to object in the district court to these calculations, which are heavily dependent upon the lower court's factual determinations, the Defendant has waived his right to raise these issues on appeal. United States v. Saucedo, 950 F.2d 1508, 1518 (10th Cir.1991).
 
 
 24
 Mr. Williams finally asserts that the district court mistakenly added his criminal history points. The presentence report does reveal a calculation error. However, while Mr. Williams should have been given a criminal history score of five instead of six, the mistake does not affect the court's determination of Mr. Williams' criminal history at a level III.
 
 
 25
 AFFIRMED.
 
 
 
 [1]
 This order and judgment has no precedential value and shall not be cited, or used by any court within the Tenth Circuit, except for purposes of establishing the doctrines of the law of the case, res judicata, or collateral estoppel. 10th Cir. R. 36.3
 
 
 [2]
 The Honorable H. Dale Cook, Senior United States District Judge for the Northern District of Oklahoma, sitting by designation