**UNITED STATES of America,**
**Plaintiff/Respondent,**

**v.**

**Steve E. WILLIAMS, Defendant/Movant.**

**Criminal No. 93–40001–01–SAC.**
**Civil No. 96–3169–SAC.**

United States District Court,
D. Kansas.

Nov. 5, 1996.

Steve E. Williams, Littleton, CO, Pro Se and Susan L. Forman, Asst. Federal Public Defender, District of Colorado, Denver, CO, for Defendant.

Thomas G. Luedke, Office of United States Attorney, Topeka, KS, for the U.S.

## MEMORANDUM AND ORDER

CROW, District Judge.

On April 22, 1993, the grand jury returned a ten count superseding indictment charging Steve E. Williams and others with conspiracy to distribute in excess of 100 kilograms of marijuana, distribution of marijuana, money laundering and other related crimes. Pursuant to a plea agreement, Williams plead guilty to Count One (conspiracy in violation of 21 U.S.C. §. 846) and to Count Seven (money laundering in violation of 18 U.S.C. § 1956). In exchange, the government agreed to dismiss the remaining counts of the superseding indictment. On January 5, 1994, this court sentenced Williams to a primary term of incarceration of 292 months on Count 1 and to a concurrent sentence of 60 months on Count 7. On March 27, 1995, the Tenth Circuit affirmed the sentence imposed by this court. *See United States v. Williams,* 51 F.3d 287 (10th Cir.1995) (Table). Before this court, Williams was represented by retained counsel David Gilman.[1]

This case comes before the court upon Williams' "Petition for Relief Pursuant to 28 U.S.C. § 2255" (Dk 227). In that motion, Williams argues that certain civil forfeiture actions barred his subsequent criminal convictions under double jeopardy principles. Williams. also contends his guilty plea was involuntary based upon his attorney's "assurances" that his sentence would be between the range of 52 to 78 months. Williams contends that his reading skills were insufficient to fully understand the operation of the plea agreement and the extent of the penalty that he faced when he entered his plea. With additional time and improved reading skills afforded by his incarceration, Williams now contends that he would never have entered a guilty plea. Williams indicates that he rejected prior offers from the government which would have carried sentences of ten years or seventeen years. Finally, Williams contends that his attorney was ineffective for failing to raise double jeopardy as a defense to his criminal convictions. Williams contends that he is entitled to an evidentiary hearing to resolve the issues raised in his motion.

On May 13, 1996, the government filed its response to Williams' motion. The government contends that Williams' criminal convictions are not barred by double jeopardy. The government disputes Williams' recitation

---

1. Williams was represented by Jerold Berger during the early stages of the proceedings before the district court. Williams bases all of his claims for relief based upon ineffective assistance of counsel on the conduct of Gilman.

of the facts regarding his guilty plea and argues that he is not entitled to relief based upon the arguments he advances. "The government has no knowledge or record of offering such an agreement."[2] The government also contends that his counsel was not ineffective. Finally, the government contends that no evidentiary hearing is necessary as Williams' arguments are directly answered by the record in this case.

On June 19, 1996, Williams filed a reply to the government's response. Attached to Williams' reply is an affidavit which indicates that he would not have plead guilty if he knew his sentence would exceed 78 months.

At the time that Williams filed his § 2255 motion and reply brief, the federal courts were divided on the issue of whether civil forfeiture actions instigated by the federal government barred subsequent criminal prosecutions. *See United States v. Carlos,* 906 F.Supp. 582, 588–89 (D.Kan.1995), *aff'd,* No. 95–3362, 1996 WL 148583 (10th Cir. April 2, 1996) (summarizing federal court's divergent views on the issue). On June 24, 1996, the Supreme Court resolved the conflict among the circuits, holding that in rem civil forfeitures are neither punishment nor criminal for purposes of the Double Jeopardy Clause. *See United States v. Ursery,* — U.S. —, 116 S.Ct. 2135, 135 L.Ed.2d 549 (1996).

The Supreme Court's holding in *Ursery* essentially destroyed all of Williams' double jeopardy arguments based upon the prior civil forfeitures as well as his ineffective assistance of counsel arguments tied to those same double jeopardy arguments. *See United States v. Madrid,* 94 F.3d 656 (10th Cir.

1996) (Table) (available on Westlaw 1996 WL 477294) (in light of Supreme Court's decision in *Ursery,* defendant has no basis for relief based upon double jeopardy, "and consequently no grounds for an ineffective assistance of counsel claim."). Sensing the death of his double jeopardy arguments, Williams filed a "Motion for Leave to Amend § 2255 Petition" (Dk. 233). In that motion, Williams seeks leave to amend his pleading in light of the Supreme Court's holding in *Ursery.* Williams contends that the Supreme Court's decision in *Ursery* does not foreclose an alternative argument that his criminal convictions were barred by the doctrine of res judicata, or in the alternative, that the sentence imposed on count one was a prohibited multiple and successive punishment. In regard to his alternative argument, Williams contends that because Count 1 was "an essential element of Count 7" he was punished twice by imposing a sentence on each count. "It is Mr. Williams' position that the sentence imposed as to Count 1 is invalid and must be set aside." Williams contends that Count 1, charging conspiracy, "as a matter of law, is the lesser included offense of Count 10, Continuing Criminal Enterprise" and that he is therefore entitled to vacation of Count 1.[3]

The government filed no response to Williams' motion for leave to amend.

In the interest of expediency, the court simply grants Williams' motion for leave to amend and will consider the arguments he advances in his amended "petition" on the merits. The court will consider his arguments seriatim.

---

2. The court accepts this as true. Even if it were not true, Williams would not be entitled to the relief he seeks. The fact that Williams may have rejected earlier, better deals with the government does not mean that his subsequent decision to enter guilty plea was not voluntary. As set forth in painful detail below, the plea agreement which Williams entered with the government specifically set forth the minimum and maximum penalty that he faced. Those penalties were also explained by the court prior to receiving Williams' plea. As the government suggests, it could not make an agreement that Williams would receive a specific sentence except pursuant a plea agreement under Fed.R.Crim.P. 11(e)(1)(C).

3. Williams correctly notes that in *Rutledge v. United States,* — U.S. —, 116 S.Ct. 1241, 134 L.Ed.2d 419 (1996), the Supreme Court held that a conspiracy to distribute controlled substances in violation of 21 U.S.C. § 846 is a lesser included offense of conducting a continuing criminal enterprise in violation of 21 U.S.C. § 848. Had Williams plead guilty to Count 1 and Count 10 his arguments seeking to vacate Count 1 might have merit. However, because Williams did not plead guilty to Count 10, his entire double jeopardy argument premised on *Rutledge* collapses.

## Applicable Law

### Section 2255 Motions

Title 28, section 2255 now provides in pertinent part:

A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

Unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall cause notice thereof to be served upon the United States attorney, grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto. If the court finds that the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack, the court shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate.

A court may entertain and determine such motion without requiring the production of the prisoner at the hearing.

An appeal may be taken to the court of appeals from the order entered on the motion as from a final judgment on application for a writ of habeas corpus.

An application for a writ of habeas corpus in behalf of a prisoner who is authorized to apply for relief by motion pursuant to this section, shall not be entertained if it appears that the applicant has failed to apply for relief, by motion, to the court which sentenced him, or that such court has denied him relief, unless it also appears that the remedy by motion is inadequate or ineffective to test the legality of his detention.

A 1–year period of limitation shall apply to a motion under this section. The limitation period shall run from the latest of—

(1) the date on which the judgment of conviction becomes final;

(2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;

(3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

Except as provided in section 408 of the Controlled Substances Act, in all proceedings brought under this section, and any subsequent proceedings on review, the court may appoint counsel, except as provided by a rule promulgated by the Supreme Court pursuant to statutory authority. Appointment of counsel under this section shall be governed by section 3006A of title 18.

.    .    .    .    .

"Section 2255 motions are not available to test the legality of matters which should have been raised on direct appeal." *United States v. Warner,* 23 F.3d 287, 291 (10th Cir.1994) (citation omitted). "Consequently, a defendant may not raise claims that were not presented on direct appeal unless he can show cause and prejudice resulting from the error." *United States v. Cook,* 45 F.3d 388, 392 (10th Cir.1995) (citing *Warner* ). "A defendant may establish cause for his procedural default by showing that he received ineffective assistance of counsel in violation of the Sixth Amendment." *Cook,* 45 F.3d at 392 (citing *Murray v. Carrier,* 477 U.S. 478,

488, 106 S.Ct. 2639, 2645, 91 L.Ed.2d 397 (1986)).

## Ineffective Assistance of Counsel

The Sixth Amendment of the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to have the Assistance of Counsel for his defense." "An indigent defendant in a criminal trial has the constitutional right to the assistance of counsel." *Baker v. Kaiser,* 929 F.2d 1495, 1498 (10th Cir.1991) (citing *Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963)). "The right to counsel also extends to a defendant's first appeal as of right." *Baker,* 929 F.2d at 1498 (citing *Douglas v. California,* 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963)).

> In criminal prosecutions, "the right to counsel is the right to effective assistance of counsel." *McMann v. Richardson,* 397 U.S. 759, 771 n. 14, 90 S.Ct. 1441, 1449 n. 14, 25 L.Ed.2d 763 (1970); *McGee v. Crist,* 739 F.2d 505, 506 (10th Cir.1984). The Sixth Amendment guarantee of effective assistance of counsel "demands that defense counsel exercise the skill, judgment and diligence of a reasonably competent defense attorney." *Dyer v. Crisp,* 613 F.2d 275, 278 (10th Cir.) (en banc), *cert. denied,* 445 U.S. 945, 100 S.Ct. 1342, 63 L.Ed.2d 779 (1980).

*United States v. Ruth,* 768 F.Supp. 1428, 1430 (D.Kan.1991), *aff'd,* 963 F.2d 383 (10th Cir.1992).

> To establish a claim for ineffective assistance of counsel, a defendant must show that (1) his counsel's performance was constitutionally deficient, and (2) counsel's deficient performance was prejudicial. *Strickland [v. Washington],* 466 U.S. [668] at 687 [104 S.Ct. 2052, 2064, 80 L.Ed.2d 674] [ (1984) ]. Counsel's performance is deficient if the representation "falls below an objective standard of reasonableness." *Id.* at 690 [104 S.Ct. at 2064]. Prejudice is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694 [104 S.Ct. at 2068].

*Cook,* 45 F.3d at 392.

■ There is a strong presumption that counsel provided effective assistance, and a section 2255 defendant has the burden of proof to overcome that presumption. *United States v. Ferrer,* 1996 WL 507143 (D.Kan. Aug. 7, 1996) (*citing United States v. Rantz,* 862 F.2d 808, 810 (10th Cir.1988), *cert. denied,* 489 U.S. 1089, 109 S.Ct. 1554, 103 L.Ed.2d 857 (1989) (*citing United States v. Cronic,* 466 U.S. 648, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984))).

## Need for an Evidentiary Hearing

No evidentiary hearing is required as the issues presented by Williams are purely questions of law or can be decided based upon the record. *See Carlos,* 906 F.Supp. at 585; *Cf. United States v. Davis,* 60 F.3d 1479, 1483 (10th Cir.1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 1829, 134 L.Ed.2d 933 (1996).

## Res Judicata

■ Williams apparently acknowledges that his request for relief based upon his double jeopardy arguments that are tied to the prior civil forfeiture are precluded by *Ursery.* Williams contends that the Supreme Court in *Ursery* did not, however, foreclose his res judicata argument. Williams basically argues that the government's prior litigation of the civil forfeiture actions involved proving that Williams committed the same crimes of which he was convicted. Williams argues that under the doctrine of res judicata, the government was barred from relitigating the same issues previously decided in the civil litigation again in his criminal prosecution.

"The doctrine of res judicata, also known as claim preclusion, is designed to promote judicial economy be preventing litigants from bringing repetitive lawsuits based on the same cause of action." *United States v. Brekke,* 97 F.3d 1043, 1047 (8th Cir.1996). "Under the doctrine of collateral estoppel, or 'issue preclusion,' once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case." *Robinson v. Volkswagenwerk AG,* 56 F.3d 1268, 1272 (10th Cir.1995), *cert. denied,* ——

U.S. ——, 116 S.Ct. 705, 133 L.Ed.2d 661 (1996).

Williams' suggestion that res judicata, or claim preclusion, principles bar his subsequent criminal convictions runs aground quickly as "[i]t is well established that the government may have both a civil and a criminal cause of action as a result of a single factual situation." *Brekke*, 97 F.3d 1043, 1047 (collecting cases).

In *United States v. Barnette*, 10 F.3d 1553, 1561 (11th Cir.), *cert. denied*, —— U.S. ——, 115 S.Ct. 74, 130 L.Ed.2d 28 (1994), the Eleventh Circuit rejected a defendant's argument that under res judicata principles a prior criminal judgment against him barred the government from subsequently pursuing a civil action against him.

> Barnette asserts that the present action is barred under principles of res judicata. "[A] federal court must apply federal law to determine the preclusive effect of a prior federal court decision." *Citibank, N.A. v. Data Lease Fin. Corp.*, 904 F.2d 1498, 1501 (11th Cir.1990). The doctrine of res judicata in federal law prohibits "the filing of claims which were raised or could have been raised in an earlier proceeding." *Id.* Barnette asserts that because the Government could have brought its civil claims as part of the criminal trial, res judicata bars this suit.
>
> We have some doubts about the Government's ability to bring civil claims as part of a criminal proceeding. Barnette contends that *[United States v.] Halper*[, 490 U.S. 435, 109 S.Ct. 1892, 104 L.Ed.2d 487 (1989) ] allows such a mixed action, but he points to no statutory authorization for a hybrid proceeding of that sort. *Halper* says only that the ruling in that case does not prevent imposition of a civil penalty in a criminal trial. 490 U.S. at 450, 109 S.Ct. at 1903. We hardly think that this passing dicta renders moot other obstacles to such hybrid proceedings. These obstacles are one reason that the doctrine of res judicata often has been held not to bar a civil case brought subsequent to a criminal trial.

> *Cf., e.g., Standefer v. United States*, 447 U.S. 10, 23 & n. 18, 100 S.Ct. 1999, 2007 & n. 18, 64 L.Ed.2d 689 (1980) (holding that a "not guilty" verdict does not estop the Government in a subsequent civil case because, *inter alia*, "the prosecution's discovery rights in criminal cases are limited"); *Helvering v. Mitchell*, 303 U.S. 391, 397, 58 S.Ct. 630, 632, 82 L.Ed. 917 (1938) ("The difference in degree of the burden of proof in criminal and civil cases precludes application of the doctrine of res judicata."). Furthermore, Barnette's res judicata theory ignores the result of *Halper* itself. There, the Supreme Court remanded a civil case for further fact finding in order to determine whether a civil remedy would be permitted, despite the fact that the defendant had already been prosecuted for the same conduct. *See Halper*, 490 U.S. at 452, 109 S.Ct. at 1904. Under Barnette's reading of the *Halper* case, the *Halper* action itself would have been barred by res judicata. Yet the Supreme Court never mentioned that possibility. We will not interpret and apply dicta in a Supreme Court decision in a way that is inconsistent with the disposition reached in that very decision.

10 F.3d at 1561.

Williams essentially asks the court to ignore the plain holding of the Supreme Court in both *Halper* and *Ursery*. In fact, Williams' position is indistinguishable from Ursery's position—a prior civil forfeiture action followed by a criminal conviction—yet the Supreme Court had no difficulty in reversing the court of appeals and affirming Ursery's criminal conviction. Williams is not entitled to relief under the doctrine of res judicata or collateral estoppel.

### Double Jeopardy [4]

■ "The Fifth Amendment's guarantee against double jeopardy 'protects against multiple punishments for the same offense.'" *Mansfield v. Champion*, 992 F.2d 1098, 1100 (10th Cir.1993) (quoting *North Carolina v. Pearce*, 395 U.S. 711, 717, 89 S.Ct. 2072,

---

4. The Double Jeopardy Clause of the Fifth Amendment provides: "nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb...." U.S. Const. amend. V.

2076, 23 L.Ed.2d 656 (1969)); *see United States v. Halper,* 490 U.S. 435, 440, 109 S.Ct. 1892, 1897, 104 L.Ed.2d 487 (1989) ("[T]he Double Jeopardy Clause protects against three distinct abuses: a second prosecution for the same offense after acquittal; a second prosecution for the same offense after conviction; and multiple punishments for the same offense.").

"Where multiple counts for which a defendant is convicted cover the same criminal behavior, our review is limited to whether Congress intended multiple convictions and sentences under the statutes." *United States v. Morehead,* 959 F.2d 1489, 1506 (10th Cir.1992). "We first look to the language of the statutes and then to legislative history to discern Congressional intent regarding multiple convictions and sentences. If Congressional intent cannot be discerned, we apply the well-settled "rule of statutory construction" set forth in *Blockburger v. United States,* 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), 'to determine whether Congress has in a given situation provided that two statutory offenses may be punished cumulatively.' " *Id.* (quoting *Whalen v. United States,* 445 U.S. 684, 691, 100 S.Ct. 1432, 1437, 63 L.Ed.2d 715 (1980)). This test was articulated by the Supreme Court as follows:

> [W]here the same act or transaction constitutes a violation of the two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not.

*Blockburger v. United States,* 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932). In short, the same criminal act may constitute separate offenses if each requires proof of some fact not required in proving the other.

Under these standards, it is patently clear that Williams' conviction on Count 7 is not barred by his conviction on Count 1 and vice-versa. Although the charges against Williams may arise out of the same criminal acts, proof of conspiracy requires proof of elements not necessary to prove money laundering.

"In order to sustain a conviction for conspiracy, the government must show that there was an agreement to violate the law, that the defendant knew the essential objectives of the conspiracy, that the defendant knowingly and voluntarily took part in the conspiracy, and that the coconspirators were interdependent." *[United States v. Evans,* 970 F.2d 663,] 668 [10th Cir. 1992), *cert. denied,* 507 U.S. 922, 113 S.Ct. 1288, 122 L.Ed.2d 680 (1993) ]. The government must show that the defendant had at least a "general awareness of both the scope and the objective" of the conspiracy. *Id.* at 670. *See also United States v. Anderson,* 981 F.2d 1560, 1563 (10th Cir. 1992). The government must also show that the defendant had " 'a meeting of the minds in the common design, purpose, or objects of the conspiracy' " with other conspirators. *Id.* (*quoting United States v. Jones,* 808 F.2d 754, 755 (10th Cir.1987)). *United States v. Richardson,* 86 F.3d 1537, 1546 (10th Cir.1996). In contrast, "[t]he money laundering statute requires the government to prove that money used in the charged transaction was derived from proceeds of illegal activity." *United States v. Hardwell,* 80 F.3d 1471 (10th Cir.1996) (citing *United States v. Torres,* 53 F.3d 1129, 1136 (10th Cir.), *cert. denied,* —— U.S. ——, 116 S.Ct. 220, 133 L.Ed.2d 150 (1995)). *See United States v. Williams,* 87 F.3d 249, 254–55 (8th Cir.1996) (setting forth elements of money laundering). It is therefore clear that Williams' convictions of both conspiracy and money laundering did not violate double jeopardy.

### Voluntariness of Williams' Plea

"Once a defendant has pled guilty, the only non-jurisdictional avenue for challenging his conviction is to claim that his plea was not knowing and voluntary." *Romero v. Tansy,* 46 F.3d 1024, 1033 (10th Cir.1995), *cert. denied,* —— U.S. ——, 115 S.Ct. 2591, 132 L.Ed.2d 839 (1995). "Performance by defense counsel that is constitutionally inadequate can render a plea involuntary." *Id.* *See Worthen v. Meachum,* 842 F.2d 1179, 1184 (10th Cir.1988) ("When an involuntariness claim rests on the faulty legal decisions or predictions of defense counsel, the plea

will be deemed constitutionally involuntary only when the attorney is held to have been constitutionally ineffective."), *overruled on other grounds, Coleman v. Thompson,* 501 U.S. 722, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991). An attorney's failure to estimate with certainty the length of the defendant's sentence does not rise to the level of ineffective assistance of counsel. *See United States v. Gordon,* 4 F.3d 1567, 1570 (10th Cir.1993) ("A miscalculation or erroneous sentence estimation by defense counsel is not a constitutionally deficient performance...."), *cert. denied,* 510 U.S. 1184, 114 S.Ct. 1236, 127 L.Ed.2d 579 (1994).[5]

The court has reviewed the transcript of Williams' plea, the plea agreement and his petition to enter a plea. Williams' current contention that he did not understand his plea or the possible penalty that he faced is belied by his own sworn statements to the court, the plea agreement and by the plea petition.

In the plea agreement signed by Williams, the penalties for Count 1 and Count 7 are clearly set forth. Count 1 carried a penalty of not less than five years nor more than forty years. Count 7 carried a penalty of not more than twenty years. The plea agreement clearly sets forth the terms of Williams' agreement with the government. In exchange for Williams' plea to Counts 1 and 7, the government agreed to dismiss the remaining counts of the indictment. The plea agreement also indicates that "if the court allows dismissal of the counts and the defendant is sentenced to a term greater [than] he anticipated, the defendant will *not* have the right to withdraw his plea." The plea agreement also indicates, *inter alia,* that the "final sentence in this case is completely within the discretion of the court." *See* (Dk. 134).

Paragraph 16 of the petition to enter plea of guilty and order entering plea signed by Williams states:

> (16) I declare that no officer or agent of any branch of government (federal, state; local) has promised, suggested, or predicted that I will receive a lighter sentence, or probation, or any other form of leniency if I plead "GUILTY," except as follows: (Here insert any promises or concessions made to the defendant or his attorney. If plea of "GUILTY" is the result of the plea agreement, refer to paragraph (18) on page 4.) See (18) p. 4

> If anyone else, including my attorney, made such a promise, suggestion, or prediction, except as noted in the previous sentence, I know that he had no authority to do so.

> I know that the sentence I will receive is solely a matter within the control of the Judge. I do understand, however, that if I am subject to sentencing under the Sentencing Reform Act and the Sentencing Guidelines issued by the United States Sentencing Commission, the Judge must select a sentence from within the guideline range unless my case presents unusual features which permit the Judge to depart from the guidelines and impose a sentence either above or below the recommended guideline range.

> I hope to receive leniency, but I am prepared to accept any punishment permitted by law which the Court sees fit to impose. However, I respectfully request the Court to consider, in mitigation of punishment, that I have voluntarily entered a plea of guilty.

*See* (Dk. 134).

During Williams' change of plea hearing, the court conducted a thorough and extensive review of the consequences of his plea with Williams before accepting his plea. Williams was administered an oath prior to being questioned by the court. At that time, the court reviewed with Williams in open court the terms of his plea agreement with the government. Williams indicated that he understood the terms of the plea agreement. Williams indicated that he understood that in exchange for his plea to Counts 1 and 7, the government agreed to dismiss the remaining counts of the indictment. Williams also indicated that no one had made any other or

---

**5.** On this basis alone, Williams cannot satisfy the cause and prejudice standard necessary to over-

come the procedural bar.

different promise of agreement regarding his plea. Before accepting Williams' plea, the court carefully reviewed all the rights that he was waiving by entering his plea of guilty. The court explained the consequences of his plea, including the fact that his plea might deprive him of certain civil rights.

The following colloquy also occurred during that plea:

> THE COURT: All right. Have you had a full opportunity to discuss those rights with your and attorney and the waiver of those rights?
>
> DEFENDANT WILLIAMS: Yes, your Honor.

Williams also indicated that the government's factual proffer regarding each count could be proved and was in fact true.

The court then advised Williams of the statutory minimum and maximum sentence on each count. Williams indicated that he understood that those were the statutory penalties that he faced. The court specifically asked Williams if he understood that the maximum penalty that he faced as to count 1 was 40 years. The court also asked Williams whether he and his attorney had discussed the sentencing guidelines and how they potentially impacted his sentence. The court also asked Williams if anyone had predicted to him or promised him what the sentence would be, to which he responded "[n]o, your Honor." Finally, the court asked Williams if there was "any reason at all, whether I've asked you or not, that you think that I should not accept your guilty pleas to count 1 and 7 of the superseding indictment?" Williams responded "[n]o, your Honor."

Based upon his representations to the court, and the representations of his counsel, the court accepted Williams' plea, finding him "fully competent and capable of entering an informed plea and his plea of guilty is made voluntarily, knowingly and understandingly and the plea is supported by an independent basis in fact containing the essential elements of the offense."

From the record it is clear that the court informed Williams of the maximum penalty that he faced and that Williams, under oath, stated that he understood the penalty that he faced. Williams also stated under oath that no one had predicted or promised him what his sentence would be. Any misapprehension that Williams labored under prior to entering his plea was clarified by the court.[6] Williams' post hac assertions that his attorney predicted a lower sentence than he actually received is insufficient to require an evidentiary hearing, see *United States v. Shaw,* 89 F.3d 851 (10th Cir.1996) (evidentiary hearing required to decide § 2255 motion challenging validity of plea where court failed to inform defendant of maximum penalty during acceptance of plea) (available on Westlaw at 1996 WL 315746); *Romero,* 46 F.3d at 1033, and is inadequate to demonstrate prejudice from his counsel's "inaccurate" prediction. *See Gordon,* 4 F.3d at 1571; *see United States v. Arvanitis,* 902 F.2d 489, 494 (7th Cir.1990); *Worthen,* 842 F.2d at 1184 (defendant not prejudiced by advice that the court specifically told him was incorrect). Williams was sentenced within parameters specifically set forth by the plea agreement and as explained by the court. Consequently, Williams is not entitled to withdraw his plea.

### Summary

In sum, double jeopardy nor res judicata principles precluded Williams' criminal convictions. Williams' plea was not involuntary. The court further finds that Williams has not met his burden of proving by a preponderance of the evidence that his counsel's performance fell below an objective standard of reasonableness. *See Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984); *Lema v. United States,* 987 F.2d 48, 51 (1st Cir.1993) ("The burden is on the petitioner to demonstrate ineffective assistance by a preponderance of the evidence."); *cf., United States v. Edmonson,* 922 F.Supp. 505, 510 (D.Kan.1996) ("In section 2255 motions ... the petitioner has the burden of proving that his sentence is invalid."); *(quoting Greene v. United States,* 880 F.2d 1299, 1303 n. 6 (11th Cir.1989), *cert. denied,* 494 U.S. 1018, 110 S.Ct. 1322, 108

---

6. Williams could not have reasonably believed that the court would impose a sentence under sixty months, the mandatory minimum for Count 1.

L.Ed.2d 498 (1990)). In short, nothing argued or presented by Williams demonstrates that he is entitled to relief from his convictions or the sentence imposed as a result of those convictions.

IT IS THEREFORE ORDERED that Williams' "Motion for Leave to Amend § 2255 Petition" (Dk. 233) is granted.

IT IS FURTHER ORDERED that the relief sought in Williams' "Petition for Relief Pursuant to 28 U.S.C. § 2255" (Dk. 227) is denied.