ORDER ADOPTING AND AFFIRMING MAGISTRATE JUDGE’S RECOMMENDATION
 

 DANIEL, District Judge.
 

 THIS MATTER comes before the Court in connection with Petitioner’s Motion to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody pursuant to 28 U.S.C. § 2255 filed April 22, 1997. On July 3,1997 the case was referred to Magistrate Judge Patricia A. Coan for a recommendation on the merits of the case. On November 18, 1997 an evidentiary hearing was held before Magistrate Judge Coan.
 

 On January 16, 1998, Magistrate Judge Coan issued a Recommendation that the Motion be granted in part and denied in part. Specifically, the Magistrate Judge recommended that Petitioner’s claim that the government violated his Sixth Amendment right to compulsory process and his Fifth Amendment right to due process by intimidating the defendant’s key witness into refusing to testify be dismissed.
 
 Recommendation
 
 at 1172. Further, she recommended that Petitioner’s related Sixth Amendment ineffective assistance of counsel claims also be dismissed.
 
 Id.
 
 As to Petitioner’s claim that he is entitled to a sentence reduction because he possessed a mixture of methyl ephedrine/ephedrine, as opposed to pure ephedrine, the Magistrate Judge recommended that this claim be dismissed pursuant to stipulation of the parties.
 
 Id.
 

 Finally, the Magistrate Judge recommended that two of Defendant’s claims in his Motion be granted; namely, the claim that the trial court erred in sentencing him at a base offense level corresponding with an attempt to manufacture d- rather than 1-methamphetamine, and the claim that Petitioner was denied ineffective assistance of counsel when his trial counsel failed to make the prosecutor prove at sentencing that the methamphetamine synthesized would have been d- rather than 1-methamphetamine.
 
 Id.
 
 at 1172. Accordingly, she recommended that Petitioner be resentenced with regard to his conviction for violation of 21 U.S.C. § 841(a).
 
 Id.
 

 On January 27, 1998, Petitioner filed a timely Objection, which necessitates a
 
 de novo
 
 determination as to those specific proposed findings or recommendations to which objection is made, since the nature of the matter is dispositive. Fed.R.Civ.P. 72(b); 28 U.S.C. § 636(b)(1). Petitioner’s only objection to the Magistrate Judge’s Recommendation is that she erred in determining that he procedurally defaulted on his Fifth and Sixth Amendment claims because he failed to establish ineffective assistance of counsel. The government did not object to the portion of the Recommendation that granted Petitioner’s motion. For the reasons set forth below, I affirm and adopt the Magistrate Judge’s Recommendation.
 

 Magistrate Judge Coan found on the Fifth and Sixth Amendment claims that Petitioner failed to affirmatively prove that counsel’s actions prejudiced his case.
 
 Recommendation
 
 at 1169. Specifically, she found that due to the government’s overwhelming evidence against Petitioner, he was not prejudiced by the exclusion of his exculpatory witness Joseph Vick’s testimony.
 
 Recommendation
 
 at 1169. As a basis for this conclusion, the Magistrate Judge relied on the following facts: 1) Petitioner was the driver of a truck carrying a dismantled methamphetamine lab; 2) methamphetamine traces were found on some of the glassware in the truck; 3) a list of chemicals, including some used to manufacture methamphetamine, was found in Petitioner’s wallet; 4) Petitioner told DEA agents that he was going to Denver to pick up chemicals on his list so that he could make an additional 200 pounds of methamphetamine; 5) Petitioner told DEA agents that he knew he was in trouble “ever since you seized that methamphetamine labora
 
 *1156
 
 tory out of my truck.”
 
 Recommendation
 
 at 1169. Furthermore, the Magistrate Judge found that Vick’s testimony would not have called this substantial evidence into question.
 
 Magistrate’s Recommendation
 
 at 1169.
 

 At the November 18, 1997, evidentiary hearing before the Magistrate Judge, Vick stated that he would have testified at Petitioner’s trial that the caked glassware and precursor chemicals found in the truck belonged to him, rather than the Petitioner. The Magistrate Judge found that, had Vick testified to these things, his credibility would have severely limited their effect on the jury. This is because Vick previously testified at a suppression hearing in his own case that some of the glassware in the truck belonged to Petitioner and that he did not know to whom the precursor chemicals belonged.
 
 Recommendation
 
 at 1169.
 

 Petitioner presents two theories for why the Magistrate Judge’s prejudice assessment was incorrect. First, he argues that the government’s case was not as strong' as the Magistrate Judge determined.
 
 Petitioner’s Objections
 
 at 4. Second, he claims that the Magistrate Judge erred in including an assessment of Vick’s credibility in her determination of prejudice because credibility determinations are solely for a jury to make.
 

 The prejudice analysis for ineffective assistance of counsel is the second prong of the
 
 Strickland
 
 test.
 
 See Strickland v. Washington,
 
 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) (formulating standards by which to judge ineffective assistance of counsel claims). It requires the defendant to prove that counsel’s deficiencies were prejudicial to his case.
 
 Id.
 
 at 692, 104 S.Ct. 2052. It is not enough for the defendant to assert that counsel’s errors were prejudicial, he must affirmatively prove that prejudice.
 
 Id.
 
 at 693, 104 S.Ct. 2052. He must show that, but for counsel’s errors, the proceedings would have turned out differently.
 
 Id.
 
 at 694, 104 S.Ct. 2052. In other words, the defendant must prove that his counsel undermined the functioning of the adversary system.
 
 Beachum v. Tansy,
 
 903 F.2d 1321, 1330 (10th Cir.1990) (citing
 
 United States v. Rivera,
 
 900 F.2d 1462, 1472 (10th Cir.1990)). Furthermore, he must “ ‘prove that his counsel’s performance was ... prejudicial’ in view of the strength of the government’s case.”
 
 United States v. Miller, II,
 
 907 F.2d 994, 997 (10th Cir.1990) (quoting
 
 United States v. Rivera,
 
 900 F.2d 1462, 1474 (10th Cir. 1990)). If Petitioner fails to satisfy this prong of the test, his ineffective assistance claim must be dismissed.
 

 I find that Petitioner failed to show that, but for counsel’s error, the proceeding would have turned out differently. Here, the government had overwhelming evidence on which the jury convicted Petitioner.
 
 See Recommendation
 
 at 1169. Furthermore, much of the evidence against Petitioner was his own self-incriminating statements. I find that Vick’s testimony would have done little to discredit this evidence. Therefore, I find that in view of the strength of the government’s case, Petitioner has failed in his burden to prove prejudice.
 

 Petitioner’s second claim is that the Magistrate Judge erred in assessing Vick’s credibility in her determination of prejudice because credibility determinations are solely for a jury to make. Petitioner cites no authority for the proposition that a judge may not take a potential witness’ credibility into account when determining an ineffective assistance of counsel claim raised in a § 2255 proceeding. Therefore, I find that this objection is without merit and must fail.
 

 After a careful review of Petitioner’s objections, the government’s response, and the record in this case, I find the Magistrate Judge’s analysis to be correct. The government’s evidence against Petitioner was overwhelming, and the exclusion of Vick’s contradicted testimony did not render this trial fundamentally unfair or unre
 
 *1157
 
 liable. Since Petitioner failed to affirmatively prove prejudice, he has failed to prove that counsel was ineffective. Therefore, his Fifth and Sixth Amendment claims are procedurally barred.
 

 Finally, as stated earlier, there were no objections to the Magistrate Judge’s recommendation that Petitioner be resen-tenced with regard to his conviction for violation of 21 U.S.C. § 841(a). This recommendation is based on Magistrate Judge Goan’s conclusion that the trial court erred in sentencing Petitioner at a base offense level corresponding with an attempt to manufacture d- rather than 1-methamphetamine. Further, there were no objections to the recommendation that Petitioner’s motion be granted in connection with the argument that Petitioner was denied ineffective assistance of counsel when his trial counsel failed to make the prosecutor prove at sentencing that the methamphetamine synthesized would have been d-rather than 1-methamphetamine.
 
 Id.
 
 at 1172.
 

 No objections having been filed to this portion of the Recommendation, I am vested with discretion to review7 the recommendation “under any standard [I] deem[ ] appropriate.”
 
 Summers v. Utah,
 
 927 F.2d 1165, 1167 (10th Cir.1991);
 
 see also Thomas v. Arn,
 
 474 U.S. 140, 150, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985) (stating that “[i]t does not appear that Congress intended to require district court review of a magistrate’s factual or legal conclusions, under a de novo or any other standard, when neither party objects to those findings”). Nonetheless, though not required to do so, I review this portion of the Recommendation to “satisfy [myjself that there is no clear error on the face of the record.”
 
 [1]
 

 See
 
 Fed.R.Civ.P. 72(b) advisory committee’s notes. Having reviewed this part of the Recommendation, I am satisfied that there is no clear error on the face of the record.
 

 For the reasons stated above, it is
 

 ORDERED that the Magistrate’s Recommendation of January 16, 1998 is AFFIRMED AND ADOPTED and Petitioner’s § 2255 motion is GRANTED IN PART AND DENIED IN PART consistent with the Recommendation. It is
 

 FURTHER ORDERED that Petitioner’s civil action filed in connection with his motion, Civil Action No. 97-D-822, be DISMISSED WITH PREJUDICE. Finally, it is
 

 ORDERED that Petitioner be resen-tenced in his criminal case, Criminal Action No. 89-GR-087, with regard to his conviction for violation of 21 U.S.G. § 841(a) in accordance with the Magistrate’s Judge’s Recommendation.
 
 [2]
 

 RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE
 

 GOAN, United States Magistrate Judge.
 

 This matter is before the court on defendant William Aguilar’s Motion Pursuant to 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody [filed April 22, 1997]. The Government filed its written response to defendant’s motion on May 28, 1997. A Special Order of Reference under Fed. R.Civ.P. 72(b) referred this case to the undersigned magistrate judge on July 3, 1997 to issue a recommendation regarding disposition of defendant’s § 2255 motion. An evidentiary hearing was held on November 18,1997 at the federal penitentiary in Florence, Colorado, where defendant is currently incarcerated. For the reasons set forth below, the court recommends
 
 *1158
 
 that defendant’s § 2255 motion be granted in part and denied in part.
 

 I. Background
 

 Defendant was convicted, under 21 U.S.C. § 841(a), for aiding and abetting an attempt to manufacture methamphetamine and for carrying a firearm in conjunction with a drug-related offense, under 18 U.S.C. § 924. See Judgment attached to defendant’s memorandum brief in support of § 2255 motion. On November 24, 1990, defendant was sentenced to 151 months on the drug charge and a consecutive 60 months on the weapons charge. Plaintiff appealed his conviction to the Tenth Circuit Court of Appeals on the grounds that the district court erred in denying his motion to suppress evidence seized from a rental truck he was driving and that the evidence at trial was insufficient to show an attempt to manufacture methamphetamine. Defendant’s conviction was affirmed on April 25,1991.
 

 The following is a summary of circumstances surrounding defendant’s arrest. On January 31, 1989, defendant was stopped for speeding by the Colorado State patrol outside Montrose, Colorado. The officer ordered defendant and his passenger, Joseph Vick, out of the vehicle. The officer then searched the vehicle and found two guns, several flasks, beakers, mantles, and tubing, some of which contained chemical residue. The residue contained trace quantities of methamphetamine. The officers found several bags of white powder in the truck. The bags contained either ephedrine or a mixture of ephedrine and methyl ephedrine. The officers also found a can of ether, and bottles of potassium bicarbonate, niciramicle, and red phosphorous. All of the chemicals seized from the truck were lawful to possess at that time.
 

 Defendant and Vick were arrested by Colorado authorities on January 31, 1989 on charges of drug trafficking and thereafter were turned over to the custody of the Drug Enforcement Administration (“DEA”).
 

 Defendant told a DEA agent that he was en route to Colorado to purchase the Rocky Mountain Organics Laboratory from a Vincent Gammill. The DEA agent testified that defendant told him he expected to obtain a list of methamphetamine “cooks” from Gammill and to market ephedrine to them. Defendant had a list of chemicals in his wallet at the time of his arrest.
 

 At the time of his arrest, defendant was a student in Phoenix. He planned to have Vick run Rocky Mountain Organics for him while he completed school.
 

 Gary Koverman, a forensic chemist for the Colorado Bureau of Investigation, testified at trial about the method which could be used to synthesize methamphetamine from some of the materials seized from the truck defendant was driving when defendant was arrested.
 

 Defendant’s § 2255 motion asserts the following grounds in support of the requested relief:
 

 (1) The government secured defendant’s conviction in violation of his Fifth Amendment right to due process and his Sixth Amendment right to compulsory process when the prosecutor intimidated key defense witness, Joseph Vick, into refusing to give dispositive exculpatory testimony on defendant’s behalf at trial;
 

 (2) Defendant’s counsel was ineffective, under the Sixth Amendment, in failing to object to the prosecutorial misconduct referenced above and in proffering Vick’s testimony in his opening statement despite a reasonable expectation that Vick would render himself unavailable;
 

 (3) Defendant’s possession of methyl ephedrine mixed with ephedrine (as opposed to pure ephedrine) should have resulted in defendant being sentenced at a lower base offense level under the sentencing guidelines because methyl ephedrine synthesizes dimethyl amphetamine rather
 
 *1159
 
 than methamphetamine. (Dimethyl amphetamine yields a lesser sentence.)
 

 (4) Defendant is entitled to a sentence reduction, because the prosecutor failed to show whether the ephedrine mixture allegedly possessed by the defendant contained levo-ephedrine (which yields d-methamphetamine) or dextro-ephedrine (which yields 1-methamphetamine), insofar as 1-methamphetamine yielded a lesser sentence under the guidelines at the time of defendant’s conviction; and
 

 (5) Counsel’s failure to investigate and raise the sentencing issues at trial constituted ineffective assistance under the Sixth Amendment.
 

 Two of the issues raised in the § 2255 motion were subjects of the parties’ stipulations at the beginning of the November 18, 1997 evidentiary hearing. The first stipulation was defendant’s concession that it is irrelevant under the sentencing guidelines (also referred to as “guidelines” or “USSG”) whether he possessed methyl ephedrine mixed with ephedrine or pure ephedrine because the guidelines do not distinguish between the amount of dimeth-yl methamphetamine, as opposed to methamphetamine, which may be synthesized from a mixture of ephedrine and methyl ephedrine.
 

 The USSG instruct that “[i]f a mixture or substance contains more than one controlled substance, the weight of the entire mixture or substance is assigned to the controlled substance that results in the greater offense level.” § 2Dl.l(e), note * (1989 version);
 
 see, also, United States v. Decker,
 
 55 F.3d 1509, 1513 (10th Cir.1995). Defendant’s own expert states that the substance yielded by an “ephedrine synthesis” of the ephedrine and methyl ephedrine mixture would include some amount of methamphetamine.
 
 See
 
 Declaration of biochemist Alexander T. Schulgin, Ph.D, f 2. Thus, the amount of any dimethyl ephedrine contained in that substance would be added to the amount of methamphetamine and the total amount of substance yielded is assigned to methamphetamine, the substance which results in a greater base offense level under the sentencing guidelines.
 
 Decker, supra.
 

 The second stipulation was the government’s concession that barring a finding by the court that defendant “unduly delayed” in filing his § 2255 motion, defendant’s claim that he is entitled to a sentence reduction because the prosecutor failed to show that the ephedrine mixture possessed by the defendant contained 1-ephedrine is valid and that plaintiff is entitled to be resentenced.
 

 II. Legal Analysis
 

 A.
 
 Procedural Defenses
 

 1.
 
 Undue delay
 

 Defendant filed his § 2255 motion on April 22, 1997. The government argues that defendant’s motion is barred under Rule 9(a) of the Rules Governing Section 2255 Proceedings because the motion was filed more than seven years after the defendant’s conviction and the government is now prejudiced in its ability to respond.
 

 Rule 9(a) states:
 

 Delayed motions. A motion for relief made pursuant to these rules may be dismissed if it appears that the government has been prejudiced in its ability to respond to the motion by delay in its filing unless the movant shows that it is based on grounds of which he could not have had knowledge by the exercise of reasonable diligence before the circumstances prejudicial to the government occurred.
 

 Rule 9(a) provides the government with an equitable affirmative defense akin to laches.
 
 Hannon v. Maschner,
 
 845 F.2d 1553, 1555 (10th Cir.1988). Defendant argues that the government is foreclosed from relying on the equitable principles set forth in Rule 9(a) as an affirmative defense to his motion because he filed the motion within one-year of the enactment of the Antiterrorism and Effective Death Penalty
 
 *1160
 
 Act (“Act”), as required under
 
 United States v. Simmonds,
 
 111 F.3d 737, 745 (10th Cir.1997).
 

 Simmonds
 
 interpreted the one-year limitation period for filing § 2255 motions established by the Antiterrorism and Effective Death Penalty Act (“Act”) which took effect on April 24, 1996.
 
 [1]
 
 The Act amended the former language of § 2255 which stated that a motion brought under that section could be made “at any time.” The Act requires a prisoner to file a § 2255 motion within one year after the occurrence of the latest of one of four alternative events.
 
 See
 
 Pub.L. 104-132, 110 Stat. 1214, Title I, § 105 (April 24, 1996). However, in
 
 Simmonds,
 
 111 F.3d at 745, the Tenth Circuit Court of Appeals stated:
 

 A statute cannot retroactively bar a prisoner from his or her ability to have the court consider the propriety of a § 2255 motion without first having a reasonable time to bring the claim; additionally, there is no indication Congress intended to foreclose prisoners who had no prior notice of the new limitations period from bringing their § 2255 motions.
 

 Accordingly, the court held that a prisoner whose conviction became final on or before April 24, 1996 must file his § 2255 motion on or before April 23, 1997.
 
 Id.
 
 at 746.
 

 Defendant correctly argues under
 
 Simmonds
 
 that because he filed his motion on April 22, 1997, the motion is not barred on statutory limitations grounds. The court disagrees, however, with defendant’s contention that
 
 Simmonds
 
 effectively nullifies Rule 9(a) of the Rules Governing Section 2255 Proceedings. The
 
 Simmonds
 
 court stated, in dicta, that the applicability or continuing validity of the Rules Governing Section 2255 Proceedings was uncertain in light of the sweeping changes made to § 2255 by the Act. 111 F.3d at 742, n. 7. However, because the Act did not formally abrogate or amend Rule 9(a),
 
 [2]
 
 the court finds that the government has appropriately asserted Rule 9(a) as an affirmative defense under the circumstances presented here.
 

 Under Rule 9(a), if the government is able to make a particularized showing of prejudice in its ability to respond to defendant’s motion as a result of “undue delay” by the defendant, the burden shifts to the defendant to show that the government is not actually prejudiced, or, that defendant’s delay was based on “grounds of which he could not have had knowledge by the exercise of reasonable diligence before the circumstances prejudicial to the government occurred.”
 
 United States v. Gutierrez, 83
 
 9 F.2d 648, 650-51 (10th Cir. 1988), quoting Rule 9(a) (other citations omitted).
 

 Here, the government argues in its response brief that it is prejudiced in its ability to respond to defendant’s motion because the trial judge is retired, the government’s case notes and file have in large part been destroyed, and the precursor chemicals which are at issue have been destroyed. At the evidentiary hearing, however, the government’s prejudice argument focused on the destruction of the precursor chemicals.
 

 As an initial matter, the court finds that the trial judge’s retirement has not prejudiced the government’s ability to respond to the allegations contained in defendant’s § 2255 motion. Full transcripts from the trial proceedings and sentencing hearing are available for this court’s review and the government has made no showing regarding what additional infor
 
 *1161
 
 mation it needs from the trial judge that is not contained in the record.
 

 With regard to the destruction of the government’s case file, the government has not shown that any prejudice resulting from the destruction of its file was caused by the defendant’s delay in filing his motion. Stated otherwise, the government has failed to show that if defendant had filed his motion at some earlier time, the information which has been destroyed would have been available at that time.
 
 See Walters v. Scott, 21
 
 F.3d 683, 688 (5th Cir.1994). The government did not present any evidence or argument at hearing concerning its claim that destruction of the case file prejudiced its ability to respond to the issues raised in defendant’s § 2255 motion. Indeed, there is no evidence in the record about the date the government’s files were destroyed. The court finds that the government’s unsubstantiated assertions of prejudice are insufficient to trigger application of Rule 9(a)’s laches defense.
 

 Finally, with regard to the destruction of the precursor chemicals, the court makes the following findings of fact with regard to the evidence presented at the evidentiary hearing on the destruction of the precursor chemicals.
 
 [3]
 

 Defendant’s trial attorney made a request for the preservation of the precursor chemicals in approximately June 1991.
 
 See
 
 Ex. Bl, attached to Reply Memorandum. On October 18, 1993, and again on November 1, 1994 (Request Nos. 93 — 1911— C and 94-1926-C), defendant made requests for information under the Freedom of Information Act, 5 U.S.C. § 552, (“FOIA”), concerning the status of the chemicals.
 
 See
 
 Ex. C, attached to Reply Memorandum; Hearing Ex. 4C.
 

 The DEA’s records show that some of the precursor chemicals were sent to the San Francisco Regional Lab for destruction on approximately April 26, 1994 after Scott Wygant, a DEA agent, confirmed with the prosecutor that defendant’s appeal of his conviction had been denied and that defendant was serving his sentence. R. at 74-75;
 
 [4]
 

 see, also,
 
 Ex. C, April 26, 1994 Report of Investigation, attached to defendant’s Reply Memorandum. The chemicals sent to San Francisco were destroyed in May 1994. R. at 79-80.
 
 [5]
 

 Wygant learned on the date of the evi-dentiary hearing, November 18, 1997, that not all of the precursor chemicals had been retained by the DEA after defendant’s trial and had therefore not been sent to San Francisco for destruction. R. at 75. The government stipulated at hearing that the federal government did not retain custody of the seized ephedrine and methyl ephedrine after defendant’s trial. R. at 85-86. Instead, the precursor chemicals were given to the Colorado State Highway Patrol and it is unknown when or if the chemicals were destroyed. R. at 87-88. DEA agent Wygant did not forward defendant’s FOIA requests to the Colorado State Highway Patrol. R. at 88.
 

 Colorado Bureau of Investigation agent Gary Koverman, the laboratory agent criminalist who tested the precursor chemicals, testified that although he retained his test notes for the chemicals, it is not possible to identify the specific isomer characteristics of the ephedrine and me
 
 *1162
 
 thyl ephedrine seized from the defendant from those notes because he did not analyze isomer composition while the precursor chemicals were in his possession. R. at 93. Koverman testified that the precursor chemicals were not tested to identify isomers because the state crime laboratory is not legally required to conduct such tests. R. at 92-93. Koverman further stated that no one involved in defendant’s trial specifically requested that tests be conducted to determine identity of the isomers in the ephedrine seized.
 
 Id.
 

 It is clear from Koverman’s testimony that it would be impossible to determine, without the precursor chemicals, whether the seized ephedrine was levo- or dextro-ephedrine. Thus, the government is unable to prove that the ephedrine seized was in fact 1-ephedrine so as to legally justify the higher sentence under the sentencing guidelines. However, the government has failed to make the necessary showing, for purposes of Rule 9(a), that its inability to identify the isomer composition of the seized ephedrine was caused by defendant’s “undue delay.” Rather, government representatives were unaware, as of the date of the evidentiary hearing, whether the Colorado State Patrol had destroyed the chemicals. In any event, it appears that defendant made diligent efforts, in 1991 after his appeal was denied, and again in 1993 and 1994, to preserve the precursor chemicals and/or the government’s records regarding the nature of those chemicals. Moreover, the government advised defendant in November 1994 that his FOIA request had been preserved.
 

 The court therefore finds that the government has failed to show that it is entitled to the laches defense available in Rule 9(a).
 

 2.
 
 Procedural default
 

 The government argues that defendant has procedurally defaulted his Fifth Amendment due process claim, his Sixth Amendment compulsory process claim, and his claim that the trial court erred in sentencing him at a base offense level consistent with an intent to manufacture d-methamphetamine, by failing to raise those alleged substantive errors at trial and sentencing, and in his appeal to the Tenth Circuit.
 
 [6]
 

 Usually, a defendant’s failure to raise an issue on direct appeal will bar his collateral attack under § 2255 unless he can demonstrate cause for, and prejudice resulting from, his ■ procedural default.
 
 United States v. Warner,
 
 23 F.3d 287, 291 (10th Cir.1994). Here, defendant claims that the constitutionally deficient performance of his trial counsel, the same counsel who represented defendant on appeal, was the cause of defendant’s failure to raise as objections at the trial court level, and his failure to raise on appeal, the substantive errors which constitute some of the claims in defendant’s § 2255 motion.
 

 Ineffective assistance of counsel may constitute cause for a procedural default.
 
 Murray v. Carrier,
 
 477 U.S. 478, 488, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986);
 
 United States v. Cook,
 
 45 F.3d 388, 392 (10th Cir.1995). To establish a claim of ineffective assistance of counsel, a defendant must show that: (1) his counsel’s performance was constitutionally deficient; and (2) the deficient performance was prejudicial to defendant.
 
 Strickland v. Washington,
 
 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984);
 
 see, also, United States v. Dixon,
 
 1 F.3d 1080, 1083 (10th Cir.1993) (applying
 
 Strickland
 
 test to assess the effectiveness of appellate counsel). The court initially analyzes the merits of defendant’s claims of substantive errors at trial to determine whether counsel was
 
 *1163
 
 ineffective in failing to make objections to those errors at the trial court level and in failing to raise the issues on appeal.
 
 Cook,
 
 45 F.3d at 392. If the claims are not meritorious, counsel was not constitutionally ineffective and plaintiffs claims are procedurally barred.
 
 Id.,
 
 pp. 392-393. If the claims are meritorious, the court must then determine whether counsel’s failure to make objections at the trial court level and failure to raise the issues on direct appeal was constitutionally deficient and prejudicial to defendant.
 
 Id.,
 
 p. 394.
 

 Alternatively, a procedural default will be excused where a “constitutional violation has probably resulted in the conviction of one who is actually innocent.”
 
 Murray,
 
 477 U.S. at 496, 106 S.Ct. 2639.
 

 B.
 
 Prosecutorial Misconduct Claim
 

 Defendant claims that the government violated his Fifth Amendment Due Process rights and his Sixth Amendment right to compulsory process by intimidating defendant’s key exculpatory witness, Joseph Vick, into asserting his Fifth Amendment privilege against self-incrimination and ultimately refusing to testify on defendant’s behalf at trial. Defendant further contends that his trial counsel was constitutionally ineffective for failing to object to the prosecutor’s conduct and in proffering Vick’s testimony in his opening statement despite a reasonable probability that Vick would invoke his Fifth Amendment privilege against self-incrimination.
 

 1.
 
 Facts
 

 Joseph Vick and defendant were both charged with drug trafficking offenses at the time of their arrest on January 31, 1989. Vick was charged with possession of a methamphetamine precursor with intent to manufacture methamphetamine, possession of methamphetamine with intent to distribute it, conspiracy to manufacture a controlled substance, and possession of firearms relating to his possession of equipment specially designed for the manufacture of a controlled substance.
 
 See
 
 Criminal Complaint in Criminal Case No. 89-CR-102,
 
 United States v. Joseph Vick.
 
 On April 21, 1989 Vick pleaded guilty to an information charging him with a violation of 18 U.S.C. § 924(c) which makes it unlawful to possess a firearm in relation to a drug trafficking offense.
 
 See
 
 Plea Agreement and Stipulation of Facts in Case No. 89-CR-102. In exchange for Vick’s guilty plea, the government agreed not to file any other criminal charges against Vick arising out of the same series of events on January 31, .1989 which resulted in the firearms charge.
 
 Id.
 
 at § I. Vick was sentenced to a sixty-month prison term on June 2, 1989 (.see Judgment, dated June 13, 1989, Case No. 89-CR-102) and was serving his term of imprisonment in California at the time of defendant’s trial in August 1989.
 

 Vick was identified by defendant as a trial witness at defendant’s trial. According to the defendant’s opening statement at trial (Trial Transcript, Vol. VI, at pp. 39-47), Vick’s testimony would have been that Vick was going to manage defendant’s chemical company in Colorado while defendant stayed in Phoenix to complete school and that originally only Vick and his girlfriend were going to make the trip to Colorado, but that defendant decided to go with Vick at the last minute because defendant was the only one of the three with a driver’s license. Defendant’s trial counsel informed the jury that Vick would testify that defendant arranged for the rental of the truck, that the residue-caked glassware found in the truck belonged to Vick and that Vick had loaded glassware onto the truck for the purpose of selling it in Colorado. Vick would also testify that both of the guns and some of the chemicals found in the truck belonged to him.
 

 Vick testified at the November 18, 1997 evidentiary hearing that he was transported to Colorado in August 1989 for the purpose of testifying at defendant’s trial. R. at 19. Vick stated that he spoke to defendant’s counsel, Judd Iverson, prior to trial and told Iverson that he intended to testify to the following at trial: that most
 
 *1164
 
 of the glassware found on the truck that could be utilized in the manufacture of methamphetamine belonged to him, including the glassware which was caked with ephedrine; that other glassware belonged to the defendant, but that defendant’s glassware was in a different area of the truck than Vick’s glassware; and, that the precursor chemicals which were seized from the truck by the Colorado State Patrol belonged to Vick. R. at 20-24.
 

 Vick, however, did not testify at defendant’s trial. The colloquy which resulted in Vick’s refusal to testify at defendant’s trial, and upon which Vick defendant’s prosecutorial misconduct claim is based, is found in the Trial Transcript, Vol. VII, pp. 383-389, 397-401. When Vick was called to testify at defendant’s trial, defense counsel (Iverson) informed the court that he had spoken with Vick’s public defender, Charlie Szekely, about Vick’s testimony that day and that Szekely had responded that he was aware of the matters to which Vick would be testifying, but that Szekely would not be present at defendant’s trial on Vick’s behalf.
 
 Id.,
 
 p. 383. The prosecutor then advised that there might be a problem with Vick’s plea bargain because the prosecution had recently discovered that at the time of Vick’s arrest, possession of ephedrine and possession of equipment to be used in the manufacture of methamphetamine was not a crime.
 
 Id.
 
 The prosecutor stated that because the gun charge to which Vick had pled guilty was premised on the possession charge, Vick may have plead guilty to a non offense and therefore may have a legal right to withdraw his plea.
 
 Id.
 
 The prosecutor informed the judge that she did not know whether Vick had been advised of the situation.
 
 Id.,
 
 pp. 383-384. The trial judge proceeded to examine Vick regarding his understanding of the situation.
 
 Id.,
 
 pp. 385. Vick stated that Szekely had previously explained the situation, that he felt he understood his situation at that time, and that he understood he had a right not to testify if he felt that his testimony would incriminate him and possibly cause him to be convicted of some crime.
 
 Id.,
 
 p. 386. Vick then indicated that he wished to proceed with his testimony;
 
 id.,
 
 p. 387, whereupon the prosecutor suggested that the situation be explained to Vick again by his own attorney before he was allowed to testify.
 
 Id.
 
 The following colloquy then occurred between the prosecutor and the trial judge, in the presence of Vick and defense counsel:
 

 THE COURT: Well, if your charges against him have to be dismissed, how can he possibly be damaged unless he gives evidence about some other crime?
 

 MS. KAUFMAN: I guess all that he needs to understand that if those charges have to be dismissed at this point, then I think we are back to where we were at the time the plea was entered.
 

 THE COURT: The deal is off.
 

 MS. KAUFMAN: And the other charges are reinstated.
 

 THE COURT: Maybe they are and maybe they aren’t.
 

 MS. KAUFMAN: I don’t know. They are contested by Mr. Szekely, I’m sure.
 

 THE COURT: And that will have to be decided by the court I imagine.
 

 MS. KAUFMAN: Right. That’s why I don’t want to be the one to tell him what ... law is one that because I think it’s an issue. The only thing that disturbs—
 

 THE COURT: Could we take him a little later and get an attorney from the Public Defender’s office over here to explain the situation?
 

 Trial Transcript, Vol. VII, pp. 388-389.
 

 The court, after determining that Vick’s own attorney was unavailable, summoned another public defender, Michael Katz, to explain the situation to Vick.
 
 Id.,
 
 pp. 387-88, 397. The court told Katz that “the government’s position is that they are going to try to back out of the plea bargain.”
 
 Id.,
 
 p. 398. After consulting with Katz, Vick invoked his Fifth Amendment privi
 
 *1165
 
 lege against self-incrimination based on the advice of Mr. Katz.
 
 Id.
 
 at 401.
 

 Vick testified to the following at the November 18, 1997 evidentiary hearing. After listening to the statements from the prosecutor and the trial judge, he was left with the distinct impression that if he testified on defendant’s behalf, his “plea agreement would be void, and [he] would be indicted on the same charges.” R. at 26;
 
 see, also,
 
 R. at 46. Vick stated that he was aware of the problems with his plea agreement prior to defendant’s trial, that he had discussed the situation with his own counsel, Charlie Szekely, and that Szekely had advised him that he could either withdraw his plea or enforce it. R. at 27. Szekely further advised Vick that in the event he might later decide to withdraw his plea, he should refrain from testifying at defendant’s trial because any incriminating statements could be used against him. R. at 40. Vick had already decided that he would not withdraw his plea at the time he appeared to testify at defendant’s trial. R. at 26, 29 and 40. Vick stated that he perceived the prosecutor’s remarks as a threat and that if he just walked away without testifying at defendant’s trial, his plea would remain intact. R. at 27-28. Vick stated that when Katz could not reassure him that additional charges would not be filed against him if he testified, he decided that he had better not testify. R. at 29. Vick stated that he would have felt more comfortable if he had been given the opportunity to speak to his own counsel because Katz was not familiar with the details of his case, but he was told that Szekely was unavailable at that time. R. at 47. Vick stated that if Szekely had shown up at defendant’s trial and assured Vick that he was protected by his plea agreement, he would have proceeded to testify as planned. R. at 49.
 

 On cross examination at the evidentiary hearing, the government questioned Vick regarding his understanding as to whether he had been granted immunity for his testimony at defendant’s trial. R. at 37-38. Vick testified that it was his understanding that he had immunity for any testimony he gave at defendant’s trial regarding any matter, whether or not it was related to the events for which he and defendant had been arrested. R. at 37-38, 44-45.
 

 Judd Iverson, defendant’s trial counsel, testified at the evidentiary hearing that he had intended to call Vick as a witness at defendant’s trial and that the substance of Vick’s testimony would have been the same as that relayed by Vick to the court at the evidentiary hearing. R. at 52-53. Iverson stated that he did not raise an objection during the colloquy between Vick, the prosecutor and the trial court. R. at 59. Iverson testified that in hindsight he should have objected to what was being said. R. at 58-59, 68. Iverson further stated that he did not ask for a continuance to provide Vick with an opportunity to consult with his own attorney, fiat 59.
 

 After Vick asserted his Fifth Amendment privilege against self-incrimination, his prior testimony from the suppression hearing was read into evidence. However, defendant contends that the focus of the suppression hearing was different from the focus at trial and that Vick’s testimony at that hearing “did not deliver on the promises made by [defense] counsel in his opening [statement].” Memorandum in support of § 2255 motion, p. 12. Vick’s testimony at the suppression hearing was that he rented the truck at defendant’s request, that some of the glassware found in the truck belonged to him and some belonged to defendant, that some of the glassware was loaded at defendant’s house, that two of the three guns found in the truck belonged to Vick and one to defendant, and that he did not recall to whom the chemicals found in the truck belonged.
 
 See
 
 Trial Transcript, pp. 409-430.
 

 Iverson stated that Vick’s testimony at defendant’s trial was critical because Vick would have testified, for the first time
 
 *1166
 
 under oath, that the caked glassware and precursor chemicals found in the truck belonged to him, not to the defendant. R. at 53, 57. Defendant contends that Vick’s testimony would have refuted the prosecutor’s charge that defendant went to Colorado with an intent to manufacture methamphetamine and that defendant took a substantial step toward the completion of that process. Instead, defendant argues, the evidence would have shown that defendant was merely transporting some of his personal belongings to his legitimately-purchased and legally-operated chemical company.
 

 2.
 
 Legal analysis
 

 a.
 
 Substantive claim
 

 The Sixth Amendment guarantees a defendant the right to compel the attendance of witnesses at trial on his behalf. In
 
 Washington v. Texas,
 
 388 U.S. 14, 19, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967), the Supreme Court held that a defendant’s right to offer testimony of witnesses and to compel their attendance was also grounded in the Due Process Clause of the Fourteenth Amendment:
 

 The right to offer the testimony of witnesses, and to compel their attendance, if necessary, is in plain terms the right to present a defense, the right to present the defendant’s version of the facts as well as the prosecution’s to the jury so it may decide where the truth lies. Just as an accused has the right to confront the prosecution’s witnesses for the purpose of challenging their testimony he has the right to present his own witnesses to establish a defense. This right is a fundamental element of due process of law.
 

 See, also, United States v. Goodwin,
 
 625 F.2d 693, 703 (5th Cir.1980) (holding that substantial governmental interference with a defense witness’ free and unhampered choice to testify violates defendant’s Fifth Amendment due process rights).
 

 To establish a violation of defendant’s due process right to compulsory process, a defendant must show that “an act by the government caused the loss or erosion of testimony that was both material and favorable to the defense.”
 
 Griffin v. Davies,
 
 929 F.2d 550, 553 (10th Cir. 1991), citing
 
 United States v. Valenzuela-Bernal,
 
 458 U.S. 858, 867, 102 S.Ct. 3440, 73 L.Ed.2d 1193 (1982).
 

 The court is guided by certain legal principles in determining whether the government has caused the loss of defense witness testimony. A trial court may properly advise a witness of his right not to incriminate himself.
 
 United States v. Smith,
 
 997 F.2d 674, 680 (10th Cir.1993);
 
 United States v. Morrison,
 
 535 F.2d 223, 228 (3rd Cir.1976). Further, a prosecutor faced with an unrepresented defense witness who may be asked to provide self-incriminating testimony can advise the witness of the risks he faces in testifying “in a manner calculated to engender informed and uncoerced decision-making on the part of the witness.”
 
 United States v. Jackson,
 
 935 F.2d 832, 847 (7th Cir.1991), citing
 
 U.S. v. Blackwell,
 
 694 F.2d 1325, 1335 (D.C.Cir.1982). However, any additional, unnecessary comments by the prosecutor as to a witness’ right to invoke the Fifth Amendment may constitute an interference with the witness’ free and unhampered choice to testify, thereby depriving defendant of his right to freely-given testimony.
 
 Id.
 
 Where “the substance of what the prosecutor communicates to the witness is ‘a threat over and above what the record indicated] was timely, necessary, and appropriate,’ the inference that the prosecutor sought to coerce a witness into silence is strong.”
 
 Jackson,
 
 935 F.2d at 847, quoting
 
 United States v. Simmons,
 
 670 F.2d 365, 369 (D.C.Cir.1982).
 

 In
 
 United States v. MacCloskey,
 
 682 F.2d 468 (4th Cir.1982), the defendant expressed his intent, prior to trial, to call as a witness on his behalf an individual who had originally been indicted along with the defendant and others for conspiracy to
 
 *1167
 
 commit murder. The indictment against the witness was dismissed by the prosecutor prior to trial. However, the U.S. attorney telephoned the witness’ attorney prior to trial and instructed the attorney that he would be “well-advised to remind his client” that if she testified at defendant’s trial and incriminated herself, she could be reindicted.
 
 Id.
 
 at 475. The witness’ counsel relayed the substance of that telephone call to his client and his client, who had previously expressed a willingness to testify on defendant’s behalf, invoked her Fifth Amendment privilege against self-incrimination.
 
 Id.
 
 The witness informed the court that she had invoked her Fifth Amendment privilege because she was afraid that the dismissed indictment would be reinstated.
 
 Id.
 
 at 476. The defendant argued that the conduct of the U.S. attorney violated the defendant’s due process right to present his witnesses freely. The court agreed, reversed the conviction and granted defendant a new trial.
 

 The statements made by the prosecutor, as interpreted and reinforced by the trial court in the instant case were not as egregious as the conduct by the prosecutor in
 
 MacCloskey,
 
 but were nevertheless inappropriate. Joseph Vick, an individual characterized by defendant as a key exculpatory witness, had expressed his willingness to testify on defendant’s behalf until the prosecutor informed Vick that because he had pled guilty to a weapons charge which was predicated on a “non-offense”, his guilty plea was invalid and the charges dismissed pursuant to his plea agreement might be reinstated. The trial court reinforced the government’s statement by informing public defendant Michael Katz that the government was “threatening to back out of the plea bargain.” Thus, Vick was left with the impression from both the prosecutor and the court that charges previously dismissed against him might be reinstated at the prosecutor’s request. Defense counsel did nothing to alleviate Vick’s concerns by failing to object to the statements regarding the possible reinstatement of previously dismissed charges. Not surprisingly, Vick decided to invoke his Fifth Amendment privilege after consulting with federal public defendant Katz, an attorney not familiar with the particulars of Vick’s situation.
 

 The statements of the prosecutor and the trial judge apprised Vick that it was the government’s position that Vick may not be protected by his plea agreement if he chose to testify on defendant’s behalf, and that any testimony may be used against him in the future if the previously dismissed charges were reinstated by the government. Although the prosecutor and court could have advised Vick, an unrepresented defense witness, that if he did elect to withdraw his guilty plea at some future date, his testimony at defendant’s trial could possibly be used against him, it was not appropriate for the prosecutor and trial judge to further advise Vick that the government intended to challenge the validity of his plea agreement and that the possible result of such a challenge would be the reinstatement of previously dismissed charges.
 

 It is well-settled that when the government makes promises to a defendant in exchange for his guilty plea, the government is bound to fulfill those promises.
 
 Santobello v. New York,
 
 404 U.S. 257, 262, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971). Thus, a defendant may obtain specific performance of any promises made by the prosecutor in exchange for a guilty plea.
 
 See United States v. Maranzino,
 
 860 F.2d 981, 985 (10th Cir.1988). Alternatively, a defendant who pleads guilty to a non-offense may thereafter seek to vacate his conviction through a § 2255 motion.
 
 Marteney v. United States,
 
 216 F.2d 760, 762 (10th Cir.1954) (“where it affirmatively appears from the face of the indictment or information that no federal offense was committed, the charge is vulnerable to collateral attack by a motion under Section 2255”);
 
 see, also,
 
 C. Wright,
 
 Federal Practice and, Procedure,
 
 § 175, pp. 627-28 (1982). However,
 
 *1168
 
 it is for the court to determine whether a defendant should be allowed to withdraw his guilty plea or whether enforcement of the plea agreement is warranted under the circumstances.
 
 Allen v. Hadden,
 
 57 F.3d 1529, (10th Cir.1995), citing
 
 Santobello,
 
 404 U.S. at 262-63, 92 S.Ct. 495. Where, as in the instant case, the record indicates that Vick had decided not to withdraw his guilty plea, but rather to seek specific performance of his plea agreement under which he had already begun serving a sentence, it is likely that the court, facing a challenge to the validity of the plea agreement by the government, would not void the agreement over defendant’s objection and allow charges to be reinstated. Thus, at best it is questionable as to whether the dismissed charges against Vick could have been reinstated, and, in any event, because such charges could not have been reinstated without the approval of the court, the prosecutor’s implication, reinforced by the trial judge, that the government had the authority to void the agreement and reinstate charges was misleading.
 

 The court is persuaded that defendant has met his burden to show that “an act by the government caused the loss or erosion of testimony that was both material and favorable to the defense.”
 
 Griffin,
 
 929 F.2d at 553. Vick credibly testified at the November 1997 evidentiary hearing that he came to Colorado prepared to testify on defendant’s behalf, that he understood he could void his plea agreement, that he had made a decision not to seek to withdraw his guilty plea, and that after the prosecutor and trial judge repeatedly advised Vick at defendant’s trial that the government might void his plea agreement and reinstate previously dismissed charges, he invoked his Fifth Amendment privilege against self-incrimination.
 
 [7]
 

 Vick’s testimony arguably would have been material and favorable to the defense. The facts to which .Vick would have testified to at trial, which were not part of the record of the suppression hearing read into evidence, were that the precursor chemicals and the “caked” glassware found in the truck belonged to him, rather than to the defendant. Thus, the court makes a preliminary finding that defendant’s due process/compulsory process claim is meritorious. The court will therefore reach the issue of whether defendant’s failure to raise that claim on direct appeal can be excused by his counsel’s alleged constitutionally deficient performance or whether defendant has procedurally defaulted the claim.
 

 As stated previously, to establish a claim of ineffective assistance of counsel, defendant must show that his counsel’s performance was constitutionally deficient
 
 and
 
 that the deficient performance was prejudicial to defendant.
 
 Strickland,
 
 466 U.S. at 687, 104 S.Ct. 2052. The court need not address whether counsel’s perfor-
 
 *1169
 
 manee fell below a reasonable standard of professional conduct if it is clear that the alleged deficient performance did not result in prejudice to the defendant.
 
 Church v. Sullivan,
 
 942 F.2d 1501, 1513 (10th Cir. 1991);
 
 Strickland,
 
 466 U.S. at 697, 104 S.Ct. 2052. Any prejudice alleged by the defendant is assessed against the strength of the government’s case at trial.
 
 United States v. Miller,
 
 907 F.2d 994, 997 (10th Cir.1990).
 

 To show prejudice, defendant must establish a reasonable probability that if his trial counsel had lodged an objection to the statements by the prosecutor and the court regarding Vick’s plea agreement, Vick would have testified at defendant’s trial and Vick’s testimony would have resulted in a different outcome at trial.
 
 Strickland,
 
 466 U.S. at 694, 104 S.Ct. 2052;
 
 United States v. Kissick,
 
 69 F.3d 1048, 1055 (10th Cir.1995). Specifically, defendant must show that his counsel’s deficient performance “rendered the proceeding ‘fundamentally unfair or unreliable.’ ”
 
 Kissick,
 
 69 F.3d at 1055, quoting
 
 Lockhart v. Fretwell,
 
 506 U.S. 864, 368-371, 118 S.Ct. 838, 122 L.Ed.2d 180 (1993).
 

 The evidence at defendant’s trial strongly supports the jury’s verdict that defendant committed the crime of aiding and abetting an attempt to manufacture a Schedule II substance, namely methamphetamine, in violation of 21 U.S.C. § 841(a)(1). An “attempt” is the •wilful taking of a substantial step in an effort to bring about or accomplish something the law forbids to be done.
 
 United States v. Monholland,
 
 607 F.2d 1311, 1318 (10th Cir.1979). A substantial step is conduct, whether act or omissions, which is strongly corroborative of the firmness of the person’s criminal intent.
 
 United States v. Savaiano,
 
 843 F.2d 1280, 1296 (10th Cir. 1988).
 

 The evidence supports the jury’s findings that defendant took a substantial step toward the manufacture of methamphetamine which was sufficient to corroborate the firmness of defendant’s criminal intent. Defendant was the driver of the truck carrying the dismantled methamphetamine lab. Trial Transcript, Vol. VI, p. 135. Traces of methamphetamine were found on some of the glassware which defendant was transporting.
 
 Id.,
 
 VI, p. 200; Vol. VII, pp. 317-21. Agent Taylor seized from defendant’s wallet a list of chemicals used to manufacture methamphetamine.
 
 Id.,
 
 Vol. VI, pp. 208-209. Defendant admitted to agents Reed and Taylor that he was going to Denver to pick up chemicals on his list so that he could make “an additional 200 pounds of methamphetamine.”
 
 Id.,
 
 Vol. VI, p. 216. Defendant stated to agents Reed and Taylor that he knew he was in trouble “ever since you seized that methamphetamine laboratory out of my truck.”
 
 Id.,
 
 Vol. VI, p. 212.
 

 The above evidence, especially defendant’s admissions to DEA agents, supports the jury’s finding that defendant was intentionally transporting a dismantled methamphetamine lab to Denver with the intention of manufacturing methamphetamine upon his arrival in Denver. Vick’s additional testimony that the caked glassware and precursor chemicals found in the truck “belonged” to him rather than the defendant would not have called the substantial evidence against defendant into question. Vick had previously testified at the suppression hearing that some of the glassware in the truck belonged to defendant. Vick also testified at the suppression hearing that he was not certain to whom the precursor chemicals found in the truck belonged. Had Vick affirmatively testified at defendant’s later trial that the precursor chemicals did belong to him, his testimony would have been subject to impeachment by the prosecution and his credibility likely questioned by the jury.
 

 The court is not persuaded that the omission of Vick’s testimony rendered defendant’s trial fundamentally unfair or unreliable. Accordingly, defendant was not prejudiced by his counsel’s failure to make objections during the colloquy between the
 
 *1170
 
 prosecutor, trial judge and Vick or by counsel’s failure to raise the compulsory process claim on appeal. Defendant therefore cannot show that his counsel’s deficient performance was the cause of his procedural default on his due process/compulsory process claim. The court further finds that defendant has failed to show that his is one of the extraordinary cases where a “constitutional violation has probably resulted in the conviction of one who is actually innocent.”
 
 Murray,
 
 477 U.S. at 496, 106 S.Ct. 2639.
 

 The court therefore recommends that defendant’s due process/compulsory process claim be dismissed because defendant has procedurally defaulted that claim.
 

 b.
 
 Ineffective assistance of counsel claim
 

 Defendant’s § 2255 motion asserts a separate claim that he was denied effective assistance of counsel when his trial counsel failed to lodge an objection to the statements by the prosecutor and trial judge regarding the prosecutor’s implicit threat to void Vick’s plea agreement and possibly reinstate previously dismissed charges. As set forth in Section II.B.2.a,
 
 swpra,
 
 the court finds that even'if counsel was ineffective in failing to object, defendant has failed to establish a reasonable probability that had Vick testified, his testimony would have altered the outcome of defendant’s trial in light-of the substantial evidence supporting the jury’s guilty verdict.
 

 Defendant further contends that his trial counsel was ineffective when counsel structured the defense’s case around the testimony of Vick, as set forth in the defense’s opening statement, despite the existence of a reasonable probability that Vick would assert the Fifth Amendment.
 

 The court notes that defendant’s position is incongruous. With regard to defendant’s compulsory process claim, defendant vigorously argues that Vick came to Colorado for the express purpose of testifying at defendant’s trial with full knowledge of the problems with his plea agreement. Vick’s testimony at the evidentiary hearing corroborated the defendant’s position regarding Vick’s willingness to testify as a defense witness.
 
 See, also,
 
 Trial Transcript, Vol. VII, pp. 401-403. On the other hand, for purposes of his ineffective assistance of counsel claim, defendant argues that his trial counsel should have reasonably expected Vick to assert his Fifth Amendment privilege if called to testify on defendant’s behalf, presumably because Vick had not been granted immunity, and should not have offered Vick’s testimony in the opening statement. Defendant cannot have it both ways.
 

 The court finds that the record refutes defendant’s claim that his trial counsel was ineffective for failing to reasonably anticipate that Vick would assert his Fifth Amendment privilege against self-incrimination if called to testify on defendant’s behalf. In any event, defendant has also failed to show that the proffer of Vick’s testimony in defense counsel’s opening statement resulted in prejudice to the defendant. When Vick failed to take the witness stand at defendant’s trial, the trial judge, at defense counsel’s request, gave the jurors the following curative instruction before Vick’s prior testimony at the suppression hearing was read into evidence:
 

 Mr. Vick is unavailable. And, members of the jury, I believe there was some reference during opening statements as to his testifying and the attorneys didn’t know at that time that he would become unavailable. So you shouldn’t penalize either attorney for having made any such reference.
 

 Trial Transcript, Vol. VII, pp. 407-408. Vick’s testimony at the suppression hearing was thereafter read into evidence. As stated previously, defendant has failed to show, within a reasonable probability, that the omission of testimony by Vick regarding his ownership of the caked glassware and precursor chemicals rendered defen
 
 *1171
 
 dant’s trial fundamentally unfair and unreliable.
 

 Accordingly, the court recommends that defendant’s claims of ineffective assistance of counsel relating to Joseph Vick’s testimony be dismissed.
 

 C.
 
 Improper Application of the Sentencing Guidelines
 

 1.
 
 Factual Background
 

 The Presentence Report (“PSR”) submitted to the trial court prior to defendant’s sentencing, at § 21, states that the laboratory analysis conducted by the Colorado Bureau of Investigation showed defendant to have been in possession of 128.2 grams of ephedrine and 6598.2 grams of a methyl ephedrine/ephedrine mixture at the time of his arrest. At trial, CBI agent Koverman testified that the ephedrine synthesis reaction is =57% efficient. Trial Transcript, Vol. VI, pp. 86-100. Based on that percentage, the PSR, at U 26, calculated the yield of 3.8 kg of methamphetamine from the 6.6 kg of powder seized. Under the sentencing guidelines then in effect, the Drug Equivalency Table showed methamphetamine converting to cocaine at a ratio of 1:2 and to heroine at a ration of .4:1, thereby yielding 7.4 kg of cocaine or 1.2 kg of heroin.
 
 See
 
 Sentencing Hearing Transcript, p. 22. The heroin and cocaine equivalents result in a base level offense of 32 under USSG § 2D1.1. Defendant was found to have a criminal history level of III (Sentencing Hearing Transcript, p. 23), which, at a base offense level of 32, yielded a sentencing range of 151-188 months.
 
 Id.
 
 The trial court imposed a sentence of 151 months on defendant for the § 841(a) violation and a consecutive sixty months for the § 924(c) violation.
 
 [8]
 

 Id.
 

 Neither party presented evidence to the sentencing court as to whether the mixture of methyl ephedrine/ephedrine would have yielded d- or 1-methamphetamine.
 

 2.
 
 Legal analysis
 

 Defendant contends that the court erred in assigning defendant a base offense level corresponding with an intent to manufacture d-methamphetamine when the government failed to show that the substance which defendant could have manufactured from the methyl ephedrine/ephedrine mixture would have been d- rather than 1-methamphetamine. Under the guidelines in effect when defendant was sentenced, 1-methamphetamine had a much lower corresponding base offense level than d-methamphetamine. Defendant further argues that his trial counsel was ineffective for failing to make the prosecutor prove at sentencing that the methamphetamine which could have been manufactured from the precursor chemicals was d-methamphetamine.
 

 Because the government has raised the defense of procedural default as to defendant’s substantive claim that the trial court erred in its application of the sentencing guidelines to defendant, the court first analyzes the merits of defendant’s claim.
 
 Cook,
 
 45 F.3d at 392. It is undisputed that there was no evidence before the sentencing court as to the type of methamphetamine upon which defendant’s 151-month sentence was based. At the time of defendant’s conviction, the prosecutor bore the burden at sentencing to show that the methamphetamine which could have been produced is d- rather than 1-methamphetamine.
 
 United States v. Deninno,
 
 29 F.3d 572, 579-80 (10th Cir. 1994). Because the prosecutor did not meet its burden, the trial court erred in sentencing defendant at the higher base offense level. Accordingly, the court finds meritorious defendant’s claim that the trial court committed a substantive error in its application of the USSG to defendant.
 

 
 *1172
 
 The court next determines whether counsel was ineffective in failing to raise the substantive error on appeal.
 
 Cook,
 
 45 F.3d at 394. The court’s analysis is equally applicable to defendant’s claim that his trial counsel was ineffective for failing to raise the sentencing issue at the sentencing hearing.
 

 In
 
 United States v. Glover,
 
 97 F.3d 1345, 1349 (10th Cir.1996), the court found that counsel’s failure to hold the prosecutor to his burden at sentencing to show the type of methamphetamine upon which the sentence was based constitutes ineffective assistance of counsel under the Sixth Amendment. The court found that such conduct was outside the range of reasonable professional competence:
 

 When counsel has unwittingly relieved the government of its burden of proof, particularly when the evidence of record does not satisfy that burden, it is fair to say counsel has “so undermined the proper functioning of the adversarial process that [it] cannot be relied on as having produced a just result.”
 

 Id.,
 
 quoting
 
 Strickland,
 
 466 U.S. at 686, 104 S.Ct. 2052. The
 
 Glover
 
 court further found that counsel’s nonfeasance is prejudicial when the improper classification results in a significantly greater sentence.
 
 Id.
 
 at 1350.
 

 The government stipulated at the November 1997 evidentiary hearing that, under
 
 Glover,
 
 defendant’s counsel’s failure to put the government to its burden of proof at defendant’s sentencing hearing constitutes ineffective assistance of counsel; therefore, defendant did not procedurally default his substantive claim by failing to raise it on direct appeal. At the time of defendant’s conviction, the crime of possession with intent to manufacture 1-metham-phetamine carried a corresponding significantly lower base offense level than the crime of possession with intent to manufacture d-methamphetamine. Thus, defendant was prejudiced by the trial court’s error and by his counsel’s failure to raise any objection at the sentencing.
 

 The court therefore finds that the trial court committed a substantive error in sentencing defendant at a base offense level corresponding with an attempt to manufacture d-methamphetamine and that defendant’s trial counsel was constitutionally ineffective for failing to object to the court’s application of the sentencing guidelines to defendant.
 

 III. Recommendation
 

 For the reasons set forth above the court recommends that defendant William Aguilar’s Motion Pursuant to 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody be granted in part and denied in part as follows:
 

 Defendant’s claim that the government violated his Sixth Amendment right to compulsory process and his Fifth Amendment right to due process by intimidating the defendant’s key trial witness, Joseph Vick, into refusing to testify at defendant’s trial should be dismissed. Defendant’s related Sixth Amendment ineffective assistance of counsel claims should also be dismissed.
 

 Defendant’s claim that he is entitled to a sentence reduction because he possessed a mixture of methyl ephedrine/ephedrine, as opposed to pure ephedrine, should be dismissed pursuant to stipulation of the parties at the evidentiary hearing that there is no merit to defendant’s claim.
 
 See Decker,
 
 55 F.3d at 1509.
 

 Defendant’s claim that the trial court erred in sentencing him at a base offense level corresponding with an attempt to manufacture d- rather than 1-methamphet-amine should be granted. Defendant’s claim that he was denied effective assistance of counsel when his trial counsel failed to make the prosecutor prove at sentencing that the methamphetamine synthesized would have been d- rather than 1-methamphetamine should be granted.
 

 
 *1173
 
 Accordingly, the court recommends that defendant be resentenced with regard to his conviction for violation of 21 U.S.C. § 841(a) in accordance with the opinions expressed herein.
 

 Within ten days after being served with a copy of the proposed findings and recommendation, any party may serve and file written objections to the proposed findings and recommendation as provided by Rules of court. The district court judge shall make a de novo determination of those portions of the proposed findings or specified recommendation to which objection is made. The district court judge may accept, reject, or modify, in whole or in part, the proposed findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.
 

 Failure to make timely objections to the magistrate judge’s recommendation may result in a waiver of the right to appeal from a judgment of the district court based on the findings and recommendations of the magistrate judge.
 

 Jan. 16,1998.
 

 [1]
 

 . Note, this standard of review is something less than a “clearly erroneous or contrary to law’’ standard of review, Fed.R.Civ.P. 72(a), which in turn is less than a
 
 de novo
 
 review, Fed.R.Civ.P. 72(b).
 

 [2]
 

 . The Court does not address herein at what base offense level Petitioner should be sentenced since it believes this should be briefed in connection with the sentencing.
 

 [1]
 

 . Because the Act does not contain an express effective date provision, the effective date is the date on which the President signed the bill into law, April 24, 1996.
 
 See Gozlon-Peretz v. United States,
 
 498 U.S. 395, 404, 111 S.Ct. 840, 112 L.Ed.2d 919 (1991) (stating that when statute contains no express effective date provision, effective date is the date the President signed the bill into law).
 

 [2]
 

 .
 
 See
 
 J.S. Liebman & R. Hertz,
 
 Federal Habe-as Corpus Practice and Procedure,
 
 Chapter 24: Note, p. 173 (1996 Cum.Supp.).
 

 [3]
 

 . At hearing, the parties stipulated to the admissibility of all exhibits attached to the parties written pleadings which were not offered as exhibits at hearing. The parties also stipulated to the admissibility of all additional exhibits offered at hearing.
 

 [4]
 

 . All references to R. are to the record from the November 18, 1997 evidentiary hearing.
 

 [5]
 

 . Notwithstanding that the precursor chemicals sent to San Francisco for destruction were in fact destroyed in May 1994, the DEA’s response to defendant's November 1, 1994 FOIA request included a Report of Investigation prepared by agent Wygant on November 4, 1994 which states that "[defendant’s] appeal on his conviction is still pending. This case will remain open pending until [defendant’s] appeal has been adjudicated.” Hearing Ex. 4a; R. at 78-79.
 

 [6]
 

 . The government concedes that defendant has not defaulted on his related Sixth Amendment ineffective assistance of counsel claims because those claims are more properly raised in a collateral attack than on direct appeal.
 
 United States v. Galloway, 56
 
 F.3d 1239, 1242 (10th Cir.1995).
 

 [7]
 

 . The government contends that Vick's decision to invoke his Fifth Amendment privilege at defendant’s trial was not the result of the statements by the prosecutor and trial court as to the possible invalidity of Vick’s plea agreement, but was rather the result of Vick’s misapprehension that he had been granted statutory immunity for his testimony. The government’s position is not supported by the record.
 

 It is undisputed that the government did not grant Vick statutory use immunity for his testimony at defendant’s trial. Vick testified that his understanding of "immunity” was that he was “protected by [his] plea agreement.” R. at 37. The terms of Vick's plea agreement contained a provision that the government would not file any further criminal charges against Vick arising out of the facts relating to his and defendant's arrest. It was that provision upon which Vick relied in agreeing to be a defense witness. Vick refused to testify only after both the government and trial court made clear that the government might seek to repudiate his plea agreement and reinstate previously dismissed charges. Although Vick was not protected from possible future prosecution for any incriminating testimony he would have given regarding other criminal activity, the record does not indicate that the possibility of future unrelated prosecutions motivated his decision to assert his Fifth Amendment privilege against self-incrimination. R. at 48, 70.
 

 [8]
 

 . Under USSG § 2D 1.4(a), defendant is sentenced under § 2D 1.1 as if the object of the attempt or conspiracy was completed.